KEARNEY SPECIAL ROAD
DISTRICT, Appellant,

v.

COUNTY of CLAY, Missouri,
Respondent.

No. 75652.

Supreme Court of Missouri,
En Banc

Oct. 26, 1993.

R. Brian Hall, Gladstone, for appellant.

Tom B. Kretsinger, Jr., Liberty, for respondent.

COVINGTON, Chief Justice.

Kearney Special Road District of Clay County filed a petition to have the court declare that § 67.548, RSMo Supp.1992, entitles the road district to receive a proportionate share of Clay County's sales tax revenues. The county responded that § 67.548 does not apply to special road districts created after the date the law became effective. The county also counterclaimed, asserting that if the road district's interpretation of § 67.548 were correct, then § 67.548 violates Article 10, § 21, of the Missouri Constitution. The circuit court determined that § 67.548 does not entitle the road district to sales tax revenues, but, if § 67.548 were applicable to the road district, the statute would violate Article 10, § 21, of the Missouri Constitution. The road district appealed. The trial court's judgment on the petition for declaratory judgment is affirmed; its judgment on Clay County's counterclaim is vacated.

Clay County is a county of the first classification. In Clay County's 1987 annual budget the Clay County Commission set the county's special road and bridge fund levy at $.24 per $100 valuation. On November 3, 1987, the citizens of Clay County authorized a one-fourth percent general county sales tax, pursuant to § 67.547, RSMo Supp.1987. In Clay County's 1988 annual budget, the Clay County Commission reduced the county's special road and bridge tax levy to $.00 per $100 valuation. On April 1, 1988, Clay County's sales tax became effective. On April 12, 1988, the Missouri legislature passed § 67.-548. 1988 House Journal 1408–09 (Apr. 12). The statute became effective on August 13, 1988. Laws of Mo.1988, p. 415, 1048. In the county's 1989, 1990, and 1991 annual budgets the Clay County Commission set the county's special road and bridge tax levy at $.00 per $100 valuation.

The road district is a special road district formed pursuant to an election held on April 7, 1992, and an order adopted by the Clay County Commission on April 30, 1992. The road district's boundaries are coextensive with the boundaries of the City of Kearney.

Clay County currently pays to the City of Kearney sales tax revenues in an amount equal to twenty-five percent of the prior special road and bridge tax levy collected on properties located within the city.

Disposition of the case is dictated by the plain language of § 67.548. Subsections 1 and 2 provide in pertinent part:

> 1. In any first or second class county not having a charter form of government, which contains all or any part of a city with a population of greater than four hundred thousand inhabitants, in which the voters have approved a sales tax as provided by section 67.547, the county commission may:
>
> > (1) Reduce or eliminate ... the special road and bridge levy ...; and
> >
> > (2) Grant county sales tax revenues to cities, towns and villages and to special road districts organized pursuant to chapter 233, RSMo.
>
> 2. If the county commission reduces a special road and bridge tax levy pursuant to this section which *results in a reduction of revenue available to a city, town or village or to a special road district* organized pursuant to chapter 233, RSMo, the commission shall *in that year in which the reduction of revenue occurs* set aside and place to the credit of *each such entity* sales tax revenues in an amount at least equal to that which *each such entity* would have otherwise been entitled from the special road and bridge tax levy, had it not been for such reduction. In subsequent years, *each such entity* shall receive from the county an amount of sales tax revenue equal to the amount of special road and bridge tax revenue that *each such entity* would have received in that year, but for the reduction in the special road and bridge tax.

§ 67.548, RSMo Supp.1992 (emphasis added).

Each party contends that the plain meaning of the subject statute supports its position. Clay County reads the statute clearly to state that its provisions apply only to road districts in existence before § 67.548 became law. The road district contends that the legislature would have employed explicit language of limitation had it intended to restrict application of § 67.548 to cities, towns, villages, and special road districts in existence at the time of the enactment of § 67.548. The road district further asserts that the legislature enacted § 67.548 as a remedial measure to correct the loss certain political entities would sustain if a county reduced or eliminated the special road and bridge tax levy.

■ The road district's position requires construction of the subject statute in disregard of the plain language employed by the statute. Section 67.548, by its plain language, does not entitle the road district to a share of Clay County's sales tax revenues collected pursuant to § 67.547. Where language of a statute is clear, courts must give effect to the language as written. *State ex rel. Missouri State Bd. of Registration for the Healing Arts v. Southworth*, 704 S.W.2d 219, 224 (Mo. banc 1986). Courts are without authority to read into a statute a legislative intent contrary to the intent made evident by the plain language. *City of St. Louis v. Crowe*, 376 S.W.2d 185, 190 (Mo.1964). There is no room for construction even when a court may prefer a policy different from that enunciated by the legislature.

■ Although the language of the statute at issue is plain, proper response to the road district's contentions requires a somewhat involved parsing of the statute. In subsection 1 the legislature provided that the county commission may "[g]rant county sales tax revenues to cities, towns and villages and to special road districts organized pursuant to chapter 233." Because the legislature used the auxiliary verb "may," rather than "shall," and referred to "cities, towns and villages and to special road districts organized pursuant to chapter 233" without words modifying or restricting the phrase, subsection 1 must be read to grant, but not require, the commission the right to pay a portion of the county's sales tax revenues to any city, town, village, or special road district if the commission reduces or eliminates the special road and bridge tax levy.

In subsection 2 the legislature employed the word "shall," in contrast to using "may" in subsection 1. The first sentence of subsection 2 provides that the "commission shall

... set aside and place to the credit of each such entity sales tax revenues." The second sentence states that "each such entity shall receive from the county an amount of sales tax revenue." The legislature's use of the auxiliary "shall," rather than "may," makes clear that action by the commission in subsection 2 is mandatory.

In the first sentence of subsection 2 the legislature directs the commission in the year in which it reduces the levy to distribute a portion of the sale tax revenue to "each such entity." To resolve the question of whether the statute applies to entities not in existence at the time the statute became law, it is necessary to determine whether the legislature restricted the term "each such entity" elsewhere in the subsection, or whether the term is used merely in reference to subsection 1 where subsection 1 speaks of any city, town, village, or special road district.

Nowhere in the first sentence of subsection 2 did the legislature indicate that the term "each such entity" applies only to entities in existence before the legislature enacted the statute. Rather, the legislature made payment by the commission dependent upon the commission's "reduc[ing] a special road and bridge tax levy ... *which results in a reduction of revenue available to a city, town or village or to a special road district.*" (emphasis added). The legislature thus tied payment of sales tax revenues not merely to reductions of the levy, but also to a resultant reduction of revenue available to a city, town, village, or to a special road district. It follows, therefore, that when the legislature used the term "each such entity" in the same sentence in which it used the words "city, town or village or to a special road district," the legislature referred to cities, towns, villages, and special road districts that suffered a reduction in revenue as a result of the commission's reducing the levy.

The road district claims that in each year that the commission sets the special road and bridge tax at "zero," each city, town, village, and special road district located within the county suffers a reduction in revenue. The road district's claim contradicts the plain language of the statute. In subsection 2 the legislature provides both for the "year in which the reduction of revenue occurs" and for "subsequent years." If an entity were able to sustain a reduction in revenue in each year that the commission sets the levy at "zero," rather than only in the year that the commission lowers the levy, the legislature would not have needed to provide for the payment of revenues in subsequent years. By the use of the phrases "year in which the reduction of revenue occurs" and "subsequent years" in subsection 2, the legislature makes clear that the "reduction" occurs only in the year that the county lowers the levy.[1] Finally, since a city, town, village, or special road district created after the date the county commission lowered the levy could never have received revenue from the levy prior to the commission's lowering the levy, it follows that entities created after the date the commission lowered the levy could not suffer a reduction in revenue.

The plain language of § 67.548 requires a county commission to pay sales tax revenues only to cities, towns, villages, and special road districts in existence before the commission reduced the special road and bridge tax levy. The road district was created in 1992 after the Clay County Commission reduced the county's levy in 1988; the road district is not, therefore, entitled to a portion of Clay County's § 67.548 sales tax revenues.

Disposition of this case on the plain meaning of § 67.548 renders moot Clay County's claim that the statute violates Article 10, § 21, of the Missouri Constitution.

1. Although the road district does not make the argument, the sole remaining sentence that could contain language requiring the commission to distribute sales tax revenue to an entity other than an entity suffering a reduction of revenue is the second sentence of subsection 2. There the legislature provided that "[i]n subsequent years, *each such entity* shall receive from the county an amount of sales tax revenue." (emphasis add-

ed). Because the legislature employed the phrase "each such entity" without any language indicating that the meaning of the phrase should be distinguished from the meaning initially intended in sentence one of subsection 2, the second sentence must also be read to require the commission to pay sales tax revenues to entities that suffered a reduction in revenue.

The judgment of the trial court on the petition for declaratory judgment is affirmed. The judgment of the trial court on the counterclaim is vacated.

All concur.