**John KEENEY, Appellant,**

v.

**HEREFORD CONCRETE PRODUCTS, INC., Respondent.**

No. 78284.

Supreme Court of Missouri, En Banc.

Dec. 19, 1995.

Craig A. Sullivan, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Steven A. Skolnick, Asst. Atty. Gen., Jefferson City (Missouri Commission on Human Rights), for amicus.

Richard D. Schreiber, Gary M. Siegel, St. Louis, for respondent.

ROBERTSON, Judge.

Section 213.070(2), RSMo 1994, defines "an unlawful discriminatory practice" to include retaliation against "any other person ... because such person" has filed a complaint under the Missouri Human Rights Act. The issue in this case is whether a former employee is a "person" under section 213.070(2).

The trial court found that a former employee is not a person within the meaning of the statute. The Court of Appeals, Eastern District, affirmed. We have jurisdiction. Mo. Const. art. V, § 10. We reverse.

## I.

Hereford Concrete Products, Inc. ("Hereford") employed John Keeney from September 1970 through April 1990. During the latter part of his employment, he served as an officer on the board of directors of Hereford and held a managerial position with an annual salary of approximately $40,000. In 1988, Stephen Hereford and Glenn McNett purchased the company from Stephen's brother, Jim Hereford. The new owners recast the board, eliminating Keeney from its membership. They also reviewed the finances of the company and determined they could not continue to employee both Keeney and Clarence Baker, another managerial employee. Stephen Hereford testified that he chose to terminate Keeney first because Baker had more seniority and possessed a greater variety of skills.

On April 20, 1990, Roger Bollinger told Keeney of the company's decision to terminate him. He advised Keeney to apply for social security disability benefits and told him Hereford would pay him $10,000 a year for the next three years in monthly installments. Following his discharge, Keeney received monthly payments of $833 from Hereford in June, July, August and September.

Keeney believed Hereford fired him because of his handicap. In 1988, Keeney's cancer required the removal of his larynx. He now speaks with the aid of a voice box. On September 27, 1990, Keeney filed a complaint with the Missouri Commission on Human Rights ("the Commission") alleging Hereford violated the Missouri Human Rights Act ("the Act") by discharging him on the basis of age and handicap.

On October 24, 1990, Hereford received a copy of the charge from the Commission. That same day, Stephen Hereford called Bollinger and told him to terminate the payments to Keeney. Bollinger did so after making the following notation in Keeney's file: "10/24—Received discrimination charge from the Missouri Commission on Human Rights. Hereford telephoned and said to stop paying John." No one from Hereford ever contacted Keeney to inform him of the termination of his monthly payments.

Stephen Hereford testified that the company terminated the payments to Keeney as a result of a gradual decline in Hereford's financial condition; however, Hereford did not offer its financial records to support this contention. Further, on October 12, 1990, twelve days prior to the decision to terminate Keeney's severance payments, Hereford entered into a settlement agreement with Baker whereby Baker agreed to take early retirement and receive $10,000 a year "retirement pay" for three years. Stephen Hereford stated the company wanted to "equalize" Keeney and Baker by doing the same thing for both of them.

On December 18, 1990, Keeney filed another complaint with the Commission alleging Hereford terminated his severance payments in retaliation for his filing a charge with the Commission. After receiving his "right to sue" letters from the Commission, Keeney filed a five-count petition against Hereford. Counts I and II alleged Hereford discriminated against Keeney because of his age and handicap. Count III alleged Hereford's failure to continue to make payments to him as promised was a retaliatory action that violated section 213.070(2). Counts IV and V alleged Stephen Hereford tortiously interfered with a contract and/or business expectancy by discontinuing his payments. Because Keeney was entitled to a jury trial on Counts IV and V but not on Counts I, II and III, the trial court conducted a bench trial on Counts I, II and III only. On November 8, 1993, the trial court entered a judgment ruling in favor of Hereford on Counts I, II and III. The trial court failed to specify reasons for its holding. On November 23, 1993, Keeney filed a motion to amend the judgment requesting the trial court to state its reasons for holding against Keeney on his retaliation claim. The trial court entered an amended judgment stating it denied Keeney's retaliation claim because:

> [A]t the time of the alleged retaliatory action, no employer-employee relationship existed between [Keeney] and Hereford Concrete Products, Inc., because no contracts for the payment of money existed between [Keeney] and Hereford Concrete Products, Inc., as pled, and because the evidence does not demonstrate that the alleged retaliatory action had any impact

on [Keeney's] future employment or employability.

The trial court's judgment noted that Counts IV and V of Keeney's petition were still pending. On May 12, 1994, Keeney voluntarily dismissed these counts.

## II.

Keeney appeals the denial of Count III only. He alleges the trial court erred in denying this claim because the plain language of section 213.070(2) only required him to prove that Hereford retaliated against him because of his participation in proceedings before the Commission.

The Missouri Human Rights Act prohibits discrimination in housing, commercial real estate loans, employment, public accommodations, and the sale or rental of real estate. § 213.010, *et seq.*, RSMo 1994. Additionally, section 213.070 states:

It shall be an unlawful discriminatory practice:

(2) To retaliate or discriminate in any manner against any other person because such person has opposed any practice prohibited by this chapter or because such person has filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding or hearing conducted pursuant to this chapter.

Section 213.010, RSMo 1994, defines the word "person" as used in the Act to include "one or more individuals."

## A.

■ Keeney contends that section 213.070 is sufficiently broad to include any person against whom retaliation occurs as a result of filing a complaint with the Commission, whether or not the person is an employee of the company charged with retaliation. Hereford disagrees, claiming that such an interpretation of the statute would produce absurd results unintended by the legislature. Instead, Hereford argues that section 213.070 must be read in a manner consistent with federal law because " '[d]ecisions under the various federal employment discrimination statutes are applicable and authoritative under the [Act] as well as federal law.' " *Finley v. Empiregas, Inc. of Potosi,* 975 F.2d 467, 473 (8th Cir.1992), *quoting Lane v. Ground Round, Inc.,* 775 F.Supp. 1219, 1223

(E.D.Mo.1991). *Accord Southwestern Bell Telephone Co. v. Missouri Commission on Human Rights,* 863 S.W.2d 682, 685 (Mo. App.1993) ("If there is no Missouri law [interpreting chapter 213] we *may* apply *relevant* federal law. [Emphasis partly in original.]")

42 U.S.C. § 2000e–3(a) (1988) prohibits employers from retaliating against employees who assert their employment rights.

It shall be an unlawful employment practice *for an employer* to discriminate against *any of his employees* ... because he has opposed any practice made an unlawful employment practice ... or because he has made a charge ... under this title.

[Emphasis provided.]

It is immediately obvious that the language employed by the Congress in 42 U.S.C. § 2000e–3(a) is considerably more limited than the exceedingly broad "in any manner against any other person" language adopted by the Missouri legislature in section 213.070. Indeed, the difference in the language employed by the two statutes is sufficiently stark to render judicial interpretations of the federal law inapposite for purposes of assigning meaning to section 213.070.

The language of section 213.070(2) is clear and unambiguous. The statute renders retaliation "in any manner against any other person" an unlawful discriminatory practice.

■ Where the language of the statute is unambiguous, courts must give effect to the language used by the legislature. *Kearney Special Road District v. County of Clay,* 863 S.W.2d 841, 842 (Mo. banc 1993). Courts lack authority "to read into a statute a legislative intent contrary to the intent made evident by the plain language. [Citation omitted.] There is no room for construction even when the court may prefer a policy different from that enunciated by the legislature." *Id.* at 842.

Hereford argues, however, that the purposes of the Missouri Act—to prohibit discrimination in housing, commercial real estate loans, employment, public accommodations, and the sale or rental of real estate— are more limited than the language of section 213.070. Hereford urges that reading the

language of the statute as broadly as its plain meaning suggests would lead to absurd results, permitting actions for retaliation under the Act where no relationship exists between the person claiming retaliation and the person charged with retaliation.

We need not explore the outer boundaries of section 213.070 in this case. Where, as here, the alleged victim of retaliation is a former employee of the company charged with committing a retaliatory act, the claim promotes the Act's purpose of prohibiting discrimination or retaliation in employment.

The trial court's conclusion that Keeney could not prevail on his section 213.070 claim because "no employer-employee relationship existed between plaintiff and Hereford" is erroneous.

### B.

The trial court offered two additional bases for its holding. The first—that "no contract for the payment of money existed between the Plaintiff and Hereford as pled"—misunderstands the statutory predicate for maintaining an action for retaliation under section 213.070.

Keeney pled that Hereford agreed to pay him the $10,000 annually for three years "in consideration for [Keeney's] early retirement." As the fact finder, the trial court did not believe that any consideration passed between Hereford and Keeney for Hereford's agreement to make severance payments and, therefore, it determined that no contract existed.

At oral argument before this Court, Keeney's counsel conceded that the payment agreement was a gratuity. Nonetheless, counsel argued that section 213.070 does not require the existence of a contract before a claim of retaliation can be sustained.

■ Section 213.070 prohibits retaliation "in any manner." To retaliate is to "inflict in return." *Webster's Third New International Dictionary* 1938 (1976). As used in the statute, retaliation includes any act done for the purpose of reprisal that results in damage to the plaintiff even though the act is not otherwise the subject of a claim in contract or tort.

Retaliation does not require that a contractual relationship exist between the alleged victim of retaliation and the alleged perpetrator. It merely requires the commission or omission of an act as a *quid pro quo* for the filing of a complaint before the Commission. While the statutory language is broad enough to give us pause, it is unambiguous and consistent with the purposes of chapter 213.

The trial court erred in concluding otherwise.

### C.

Finally, the trial court ruled against Keeney "because the evidence does not demonstrate that the alleged retaliatory action had any impact on Plaintiff's future employment or employability." This ruling erroneously imposes federal interpretations of 42 U.S.C. § 2000e–3(a) on section 213.070.

Federal judicial interpretations of 42 U.S.C. § 2000e–3(a) require (1) that the employee engaged in an activity protected by the statute, (2) that adverse employment action occurred, and (3) that a causal connection exists between the two. *Sweeney v. City of Ladue*, 25 F.3d 702, 703 (8th Cir.1994).[1] An adverse employment action occurs where a former employee suing for retaliation, demonstrates that the retaliatory action adversely affects his/her future employment or employability. *Bailey v. USX Corp.*, 850 F.2d 1506, 1508 (11th Cir.1988); *Pantchenko v. C.B. Dolge Co., Inc.*, 581 F.2d 1052, 1053 (2d Cir.1978).

Under section 213.070, retaliation must be given a broader meaning; this is because section 213.070 does not limit itself to the employer-employee relationship. Thus, retaliation exists under section 213.070 when (1) a person files a complaint, testifies, assists or participates in an investigation, proceeding or hearing conducted pursuant to chapter 213 and (2), as a direct result, he or she suffers any damages due to an act of reprisal. This Court cannot judicially impose a requirement outside of the plain language in section 213.070. Here, the trial court applied

---

1. In *Sweeney,* the Eighth Circuit intimates that 42 U.S.C. § 2000e–(a) and section 213.070 are identical in scope and purpose. For the reasons expressed previously in this opinion, that notion is incorrect.

the wrong legal standard for determining if retaliation occurred under that section.

## III.

The judgment of the trial court is reversed and remanded. On remand, the trial court must determine whether Keeney suffered any damages as a result of any act of Hereford and, if so, whether Hereford's purpose in committing the act was in reprisal for Keeney having filed the complaint with the Missouri Human Rights Commission.

HOLSTEIN, C.J., and BENTON, PRICE, and WHITE, JJ., concur.

COVINGTON, J., concurs in separate opinion filed.

LIMBAUGH, J., concurs in opinion of COVINGTON, J.

COVINGTON, Judge, concurring.

I concur in all parts of the majority opinion except the determination that the term "retaliation" as used in Section 213.070 "includes any act done for the purpose of reprisal that results in damages to the plaintiff. . . ." The majority superimposes onto the statute a damages requirement. Although at least nominal damages may be a part of most acts for which the legislation would provide redress, this case does not require a decision to so limit the statute. Furthermore, if the majority insists upon writing dicta, it should not do so in disregard of section 213.075.11(1), which provides remedies under the act. In addition, section 213.075.11(2) speaks of "vindicating the public interest." Considering the purpose of the act and the remedies available, it cannot be said within the facts presented in this case that the "clear and unambiguous" meaning of section 213.070 mandates that the plaintiff sustain damages.