975 F.Supp. 1235 (1997)
Brenda WILLIAMSON, Plaintiff,
v.
ARVIN INDUSTRIES, INC., Defendant.
No. 1:96CV56 CDP.
United States District Court, E.D. Missouri, Southeastern Division.
June 29, 1997.
*1236 Kathryn E, Denner, Denner and Lynn, St. Louis, MO, for Plaintiff.
Vance D. Miller, Armstrong and Teasdale, St. Louis, MO, Kenneth J. Yerkes, John R. Maley, Derek D. Murphy, Susan M. Zoeller, Barnes and Thornburg, Indianapolis, IN, for Defendant.

MEMORANDUM AND ORDER
PERRY, District Judge.
This matter is before the Court on defendant Arvin Industries, Inc.'s motion for summary judgment. Plaintiff opposes the motion and the parties have fully briefed the issues.
Plaintiff Brenda Williamson began her employment with defendant Arvin Industries at its plant in Dexter, Missouri in September 1974. From October 1992 until April 1994, plaintiff worked as a forklift driver in the tube mill. She alleges that her supervisor, Verlin Hill, subjected her to sexual harassment by calling her offensive and demeaning names and directing sexual gestures towards her. She brings hostile environment claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. (Count I) and the Missouri Human Rights Act (MHRA), Mo.Rev.Stat. §§ 213.010 et seq. (Count II). Defendant moves for summary judgment, contending' that plaintiff cannot prove that defendant knew or should have known of the alleged harassment and failed to take proper remedial measures.

I. Relevant Factual Background

Plaintiff Brenda Williamson began her employment with defendant Arvin in 1974. Throughout her employment she held various hourly positions. In October 1992, plaintiff began working as a fork-lift driver in the tube mill. Her foreman was Verlin Hill.[1] Plaintiff alleges that Hill's conduct toward her created a hostile environment. The parties do not dispute the essential elements of Hill's conduct toward plaintiff,[2] therefore, the Court will provide an overview of the underlying facts.
Plaintiff alleges that on an almost daily basis Hill called her names, such as "big puss," "fat puss" and "fat ass." She testified that Hill directed her activities in loud, abusive, and sarcastic tones and often used profanity with her. She alleges that Hill "bird-dogged" her, i.e., followed her closely and monitored her movements. She testified that, although Hill regularly swore at male employees, he did not bird-dog them and did not use abusive language with them. Plaintiff asserts, and defendant does not contradict, that Hill engaged in the alleged conduct in front of other employees.
Plaintiff testified that Hill also made obscene gestures toward her on a regular basis and that she once observed him make a similar gesture toward the female dispatcher. Plaintiff testified that Hill frequently told her obscene jokes and showed her obscene cartoons even though she told him that she was a religious person and that she did not want him to act in this way toward her. Plaintiff also alleges that Hill told her on more than one occasion that she "needed a good screwing." Plaintiff states that she complained to her union shop steward who warned Hill that the union would file a grievance if he did not alter his conduct toward plaintiff.
Plaintiff testified that in early April 1994 she complained of Hill's conduct to Ron Garner, Arvin's assistant personnel manager, *1237 and Darlene Brown, also in the personnel department. Plaintiff and her union shop steward also complained to Steve Collins, Hill's immediate supervisor, and Greg Edwards, the personnel manager. Plaintiff admitted in deposition that she had previously refrained from complaining out of concern that Hill might lose his job and about the impact that such a complaint might have on Hill's wife. She also stated that she concealed Hill's alleged harassment from her husband.
Edwards testified by affidavit that he met with plaintiff "on or around" April 7, 1994 and offered to reassign her to an identical position within another department. According to Edwards' deposition testimony, plaintiff initially turned down the offer to transfer her. Edwards stated, and plaintiff does not dispute, that he and Steve Collins, Hill's supervisor, met with Hill within hours of receiving plaintiffs initial complaint.[3] Edwards testified that Hill acknowledged calling plaintiff names. Edwards testified, and plaintiff again does not dispute, that he issued Hill a verbal warning.
Plaintiff testified by affidavit that on April 12, 1994, she had an additional abusive encounter with Hill which so upset her she had to call her husband to take her home. Edwards met with plaintiff that day following the incident. He then met with Steve Collins and plant manager Phil Davis. On April 13, 1994, Davis and Collins met with Hill and issued a verbal warning. Davis also drafted a memorandum documenting the meeting. The memo refers to the earlier meeting held by Edwards and Collins with Hill. The memo states that Davis told Hill that the purpose of the meeting was "an effort to help him save his job" and that he must change the way in which he directed his employees.
Plaintiff returned to work on April 14, 1994. Upon her return, she was transferred to the parts department and no longer reported to Hill. The parts department and the tube mill were located in different sections of the building and were separated by another department. Plaintiff testified, however, that in June 1994, Hill covered the parts department for "a day or two" while her supervisor was absent and that during that time he stood with the dispatcher, a woman, and they sneered and laughed at plaintiff, upsetting her sufficiently that she called her husband to take her home. She testified at deposition that she found this conduct to be offensive but not sexually harassing.
Defendant has submitted copies of its equal employment opportunity and sexual harassment policies that were in effect for the years 1992 through 1994. Defendant states that these policies were posted throughout the plant. Plaintiff acknowledges that copies were posted near the time clock she used to punch in and out of work. The sexual harassment policy in effect in January 1994 states that the defendant opposes sexual harassment and gives examples of harassment, including "offensive or unwelcome physical contact, lewd or sexually suggestive comments, jokes of a sexual nature, or any display of sexually explicit pictures...." The policy states that employees should immediately notify their supervisors or "any other member of management with whom the individual would feel comfortable" if they believe they have been sexually harassed.
Defendant has submitted a copy of plaintiff's attendance record. Plaintiff took numerous paid medical leaves during her employment and defendant argues that plaintiff manipulated the medical leave policy by working the minimum amount required to maintain her benefits. Plaintiff challenges the relevance of this evidence to the issues at hand. The Court agrees that the evidence is relevant only for the limited purpose of assessing whether plaintiff can establish that defendant knew or should have known of Hill's conduct toward her. Therefore, the Court has examined plaintiff's absences only for the period during which she was assigned to the tube mill under Hill's direction. Plaintiff was on leave for the following periods between October 1992 and April 14, 1994: January 6, 1993 to April 5, 1993; June 25, 1993 to July 5, 1993; October 27, 1993 to *1238 November 29, 1993; and March 14, 1994 to April 5, 1994. Thus, plaintiff was absent from the plant for nearly twenty-three weeks of the approximately eighty weeks that she worked in the tube mill.

II. Discussion

Defendant moves for summary judgment, arguing that plaintiff cannot establish a necessary element of her hostile environment claim. Specifically, defendant asserts that it took appropriate remedial action as soon as plaintiff complained and that, therefore, plaintiff cannot show that defendant knew or should have known of the alleged harassment and failed to take remedial action. Plaintiff argues that defendant applies the wrong standard of employer liability and, alternatively, that even under the standard it advocates, defendant is liable for Hill's conduct.
In determining whether summary judgment should issue, the Court views the facts and inferences from the facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Anderson v. Liberty Lobby. Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in its pleadings but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323, 106 S.Ct. at 2552-53.

A. Title VII

In order to establish a prima facie case of hostile environment harassment, plaintiff must establish that (1) she is in a protected group, (2) she was subject to unwelcome harassment, (3) the harassment was based on sex, (4) the harassment affected a term, condition, or privilege of plaintiff's employment, and (5) the defendant knew or should have known of the harassment and failed to take proper remedial action. Smith v. St. Louis Univ., 109 F.3d 1261, 1264 (8th Cir.1997); Kinman v. Omaha Pub. Sch. Dist., 94 F.3d 463, 467-68 (8th Cir.1996) (discussing elements Of Title IX hostile environment claim). Plaintiff's contention that the Court may apply agency principles to impute liability to the employer regardless of its actual or constructive knowledge of the alleged harassment was specifically rejected by the Eighth Circuit Court of Appeals in a recently decided case, Davis v. City of Sioux City, 115 F.3d 1365, 1367-68 (8th Cir. 1997) ("In our circuit, we have applied the knew or should have known standard to supervisor-induced hostile environment sexual harassment claims.") Thus, the Court will apply the "knew or should have known" standard to plaintiff's Title VII claim. Plaintiff's arguments regarding the proper standard under the MHRA will be considered below.
Plaintiff contends that, under Title VII, employers may be held liable under traditional agency principles when the harasser acts within the scope of his employment. Plaintiff argues that Hill acted within the scope of his employment because he directed plaintiff's daily activities. As noted above, however, the Eighth Circuit applies the "knew or should have known standard to supervisor-induced hostile environment sexual harassment claims." Davis v. City of Sioux City, 115 F.3d 1365, 1367-68 (8th Cir. 1997). Thus, the Court will not address plaintiff's arguments regarding the application of agency principles to the facts of this case.
Plaintiff argues that, even under the "knew or should have known" standard, defendant cannot prevail. It is undisputed that plaintiff did not complain about Hill's conduct until April of 1994, and that defendant took immediate remedial action once plaintiff complained. Plaintiff also does not challenge the sufficiency of defendant's actions. Rather, plaintiff argues that defendant should have known of the alleged harassment, even though she did not report it for more than a *1239 year, because Hill made no attempt to conceal his conduct from others.
In support of her argument, plaintiff cites two cases for the principle that employers may be liable when the alleged harassment occurs openly. However, in each case, the court actually found that the plaintiff complained about the harassing conduct. Carr v. Allison Gas Turbine Div., Gen. Motors Corp., 32 F.3d 1007, 1012 (7th Cir.1994) (plaintiff "began complaining to ... her immediate supervisor ... and four years later nothing had been done to correct the situation."); Farpella-Crosby v. Horizon Health Care, 97 F.3d 803, 807 (5th Cir.1996) (affirming jury finding that employer should have known of harassment when plaintiff reported to human resource director that manager was making unwelcome personal comments that she found offensive). Thus, the cases do not support plaintiff's argument that employer liability can be based on open conduct alone.
Plaintiff offers no other basis for her contention that defendant should have known of Hill's conduct: She does not allege that managers observed his conduct; see Stacks v. Southwestern Bell Yellow Pages, Inc., 27 F.3d 1316, 1327 (8th Cir.1994) (employer liable when videotape of female employees being exhorted to show their breasts was shown to managers and no remedial action was taken), or that another person informed managers of Hill's offensive conduct on her behalf, see Varner v. National Super Markets, Inc., 94 F.3d 1209, 1213 (8th Cir.1996) (plaintiff's fiance's complaint to manager sufficient to put employer on notice of harassing conduct), cert. denied, ___ U.S. ___, 117 S.Ct. 946, 136 L.Ed.2d 835 (1997). In the present case, it is undisputed that plaintiff did not inform management of Hill's conduct until early April 1994 and plaintiff has not presented evidence that creates a factual dispute regarding whether defendant should have known of the alleged harassment before her complaint. Thus, plaintiff has failed to meet an essential element of her Title VII claim and defendant's motion for summary judgment will be granted with respect to that claim.

B. MHRA

Plaintiff argues that the MHRA holds employers strictly liable for acts of harassment by supervisory employees. In support of this argument, plaintiff quotes a regulation promulgated by the Missouri Commission on Human Rights stating that employers are responsible for acts of sexual harassment by supervisory employees "regardless of whether the employer knew or should have known of their occurrence." 8 C.S.R. 60-3.040(17)(C). Plaintiff also cites the decision of the Missouri Human Rights Commission in State of Missouri ex rel. Buford v. City of Branson, No. E-6/88-6671 (Sept. 27, 1995), in which the hearing examiner quotes the above regulation. Plaintiff argues that rules properly promulgated by state administrative agencies have the force of law and must be applied in preference to federal standards. The Court has reviewed the cases that plaintiff cites and believes that they stand for the narrower proposition that agencies are bound by their properly promulgated rules. See Missouri Nat'l Education Ass'n v. Missouri State Board of Mediation, 695 S.W.2d 894, 897 (Mo.1985) (en banc) (rules are binding upon agency adopting them); Prenger v. Moody, 845 S.W.2d 68, 78 (Mo.Ct.App.1992) (same).
Case law from the Eighth Circuit, Missouri state courts, and the Buford case itself support the proposition that the courts apply the federal standards to their consideration of state law discrimination claims under the MHRA. See Smith v. St. Louis Univ., 109 F.3d 1261, 1264 n. 2 (8th Cir.1997) (applying Title VII standards to MHRA hostile environment claim); Buford, at 39, ¶¶ 6-7 (citing standards from federal cases, including "knew or should have known" standard); Swyers v. Thermal Science, Inc., 887 S.W.2d 655, 656 (Mo.Ct.App.1994) ("In interpreting the MHRA, Missouri courts have adopted federal case law from Title VII cases...."); Wentz v. Industrial Automation, 847 S.W.2d 877, 879 (Mo.Ct.App.1992) (same); Manning v. Wire Rope Corp. of America, Inc., 1993 WL 625538 at *3 (Mo.Cir.Ct. Dec. 14, 1993) (applying "knew or should have known" standard in sexually hostile environment claim brought under the MHRA). The Court has *1240 been unable to locate any Missouri court case applying the regulation in the manner that plaintiff urges, and at least one court has applied the "knew or should have known" standard. Manning, 1993 WL 625538 at *3.
Plaintiff argues that the Missouri Supreme Court explicitly rejected the application of federal standards in preference to state law in addressing an employment discrimination claim, relying on Keeney v. Hereford Concrete Products, Inc., 911 S.W.2d 622, 624 (Mo.1995) (en banc). Keeney is distinguishable, however, in that the retaliation provision of the MHRA under which the plaintiff brought his claim contains much broader language than the comparable provision of Title VII. Under such circumstances, the Court said, "the difference in the language employed by the two statutes is sufficiently stark to render judicial interpretations of the federal law inapposite for purposes of assigning meaning to section 213.070." Id. at 624. Of significance to the current matter is the fact that Keeney involved a conflict between interpretations of federal and state statutes, while plaintiff urges the Court to find a conflict between the interpretation of a federal statute and a state administrative regulation.
Given the absence of Missouri court cases applying the regulation to hold employers strictly liable for harassment by supervisory employees, and the existence of contrary authority, albeit few in number, the Court rejects plaintiff's argument regarding employer liability under the MHRA and finds that the "knew or should have known" standard applies. Therefore, defendant's motion for summary judgment will be granted with respect to plaintiff's MHRA claim.
Accordingly,
IT IS HEREBY ORDERED that defendant's motion for summary judgment [# 26] is granted.
NOTES
[1] Plaintiff testified at her deposition that she had previously reported to Hill when she worked in the single pipe department sometime during the 1970s and that she had a positive working relationship with him during that time. Plaintiff's allegations are confined to the period during which she worked in the tube mill.
[2] Defendant does contest plaintiff's characterization of Hill's conduct as creating a hostile environment. Because the Court determines that plaintiff has not established employer liability, it is unnecessary to further analyze the impact of Hill's conduct.
[3] Defendant submits a document titled "Memo on Verlin Hill" dated April 13, 1994 which states, "Verlin [was] counciled [sic] with by Steve Collins and Greg Edwards within the past ten days regarding the methods used in directing the activities of one forklift driver."