

# In the
# Missouri Court of Appeals
# Western District

JAMES PITTMAN,

        Appellant,

v.

COOK PAPER RECYCLING CORP.,

        Respondent.

WD77973

OPINION FILED:

October 27, 2015

**Appeal from the Circuit Court of Jackson County, Missouri**
**The Honorable Joel Fahenstock, Judge**

**Before Special Division:**
**James Edward Welsh, P.J., Anthony Rex Gabbert, J., and Robert M. Clayton III, Sp. J.**

James Pittman appeals from the circuit court's judgment dismissing his petition for damages alleging that his employer, Cook Paper Recycling Corporation, "caused the workplace to be an objectively hostile and abusive environment based on sexual preference." The circuit court dismissed Pittman's petition for failure to state a claim.[1] Pittman contends that the circuit court erred in dismissing his claim because his petition adequately stated a claim for sex discrimination in that he alleged that he was harassed and terminated from his employment

---

[1]Pittman's petition also made a claim for retaliation. The circuit court did not dismiss this claim, but Pittman voluntarily dismissed this claim without prejudice following the circuit court's dismissal of the claim alleging that Cook Paper caused the workplace to be an objectively hostile and abusive environment based on sexual preference.

because of his sexual orientation.[2]  Because the Missouri Human Rights Act does not prohibit discrimination on the basis of sexual orientation, we affirm the circuit court's judgment dismissing Pittman's petition for failure to state a claim.

The facts, as alleged in Pittman's petition, are as follows.  Pittman, a homosexual male, worked as a controller at Cook Paper from April 2004 until his termination on December 7, 2011.  During the time Pittman was employed by Cook Paper, the president of the company, Joe T. Jurden, told Pittman that "he was a 'cocksucker' and made other comments of a sexual nature, discriminatory to a male homosexual, including asking him if he had AIDS."  Cook Paper "discriminated against [Pittman] because [Cook Paper] did not approve of the male companion that [Pittman] had been seeing."  When Pittman and his companion terminated their relationship, Cook Paper "treated [Pittman] more harshly than a male who was getting a divorce from his female wife."  Cook Paper "caused the workplace to be an objectively hostile and abusive environment based on sexual preference."  On December 7, 2011, Cook Paper terminated Pittman's employment.

On February 3, 2014, Cook Paper filed a motion to dismiss Pittman's petition alleging that the petition failed to state a claim for which relief could be granted.  Specifically, Cook Paper argued that Missouri law lacks any legal standard or statute prohibiting employment discrimination on the basis of "sexual preference" and that "sexual preference" is not a protected class under the Missouri Human Rights Act.  The circuit court agreed and dismissed Pittman's claim.  The circuit court found that Pittman did not allege discrimination on the basis of "sex" but alleged that he was discriminated against because he was a homosexual.  Thus, the circuit

---

[2]The American Civil Liberties Union of Missouri Foundation and the American Civil Liberties Union Foundation Lesbian, Gay, Bisexual, Transgender and HIV Project filed a joint *amici curiae* brief in support of Pittman.  We refer to the *amici curiae* collectively as the ACLU.

2

court concluded that the Missouri Human Rights Act does not include sexual orientation as a class of individuals protected from discrimination. Moreover, although Pittman urged the court to recognize the claim of "sexual stereotyping," the circuit court declined Pittman's request and stated that it was not the role of the court to create new causes of action. The court found that "[b]ased on the current state of Missouri law," it had to dismiss Pittman's claim. Pittman appeals.

This Court reviews the grant of a motion to dismiss *de novo*. *Travelers Prop. Cas. Co. of Am. v. Manitowoc Co., Inc.*, 389 S.W.3d 174, 176 (Mo. banc 2013). "[R]eview of a motion to dismiss for failure to state a cause of action 'is solely a test of the adequacy of the plaintiff's petition.'" *Id.* (quoting *City of Lake St. Louis v. City of O'Fallon*, 324 S.W.3d 756, 759 (Mo. banc 2010)). We review the petition "'in an almost academic manner, to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in that case.'" *Travelers Prop.*, 389 S.W.3d at 176 (quoting *City of Lake St. Louis*, 324 S.W.3d at 759). We examine the petition, accepting as true all facts alleged and construing them liberally in favor of the plaintiff to determine whether he has stated a claim upon which relief can be granted. *Lynch v. Lynch*, 260 S.W.3d 834, 836 (Mo. banc 2008).

In his sole point on appeal, Pittman asserts that the circuit court erred in dismissing his claim because his petition adequately stated a claim for sex discrimination. In particular, Pittman contends that his allegation that he was harassed and terminated from his employment because of his sexual orientation was sufficient to state a claim for discrimination under the Missouri Human Rights Act.

The issue of whether or not discriminating against an employee because of his sexual orientation is prohibited under the Missouri Human Rights Act is a question of first impression in Missouri. Section 213.055.1(1)(a), RSMo 2000, provides:

3

1.  It shall be an unlawful employment practice:

(1) For an employer, because of the race, color, religion, national origin, sex, ancestry, age or disability of any individual:

(a) To fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, national origin, sex, ancestry, age or disability[.]

"The primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute at issue." *Crawford v. Div. of Emp't Sec.*, 376 S.W.3d 658, 664 (Mo. banc 2012). "Where the language of the statute is unambiguous, courts must give effect to the language used by the legislature." *Keeney v. Hereford Concrete Prods., Inc.*, 911 S.W.2d 622, 624 (Mo. banc 1995). "Courts lack authority 'to read into a statute a legislative intent contrary to the intent made evident by the plain language.'" *Id.* (citation omitted). No room exists for construction "'even when the court may prefer a policy different from that enunciated by the legislature.'" *Id.* (citation omitted).

The plain language of the Missouri Human Rights Act is clear and unambiguous. Employers cannot discriminate against employees on the basis of their "sex." The clear meaning prohibiting discrimination based upon "sex" under the Missouri Human Rights Act intended by the Missouri legislature concerns discrimination based upon a person's gender and has nothing to do with sexual orientation. Indeed, the first definition of "sex" provided by Webster's Third New International Dictionary is "one of the two divisions of human beings respectively designated male or female[.]" Webster's Third New International Dictionary 2081 (Unabridged 1993). Legislative intent is the pole star of statutory interpretation and construction. Once legislative intent has been determined and becomes the pole star of statutory construction, there can be no unintended consequences of legislation by judicial interpretation. Thus, sex discrimination

4

occurs when a plaintiff's sex is a contributing factor in an employer's employment decision. *Ruppel v. City of Valley Park*, 318 S.W.3d 179, 185 (Mo. App. 2010). Pittman does not allege that he was discriminated against or harassed because of his gender but alleges that he was discriminated against because of his sexual orientation.

In essence, Pittman's petition is seeking a declaration that sexual orientation discrimination qualifies for protection under the Missouri Human Rights Act because it is tantamount to discrimination based on sex. We note, however, that, to even reach this reading of Pittman's petition, we must liberally construe the petition because, as the circuit court wisely noted, the petition truly does not allege discrimination or harassment on the basis of "sex." Pittman merely alleges that "[Cook Paper] caused the workplace to be an objectively hostile and abusive environment *based on sexual preference*."[3]

The Missouri Human Rights Act, however, is not a general bad acts statute but lists categories of discrimination that are unlawful: "race, color, religion, national origin, sex, ancestry, age or disability." Unlike many other states,[4] Missouri has not enacted legislation prohibiting discrimination against homosexuals by adding sexual orientation as a protected status in the Missouri Human Rights Act.[5] If the Missouri legislature had desired to include sexual orientation in the Missouri Human Rights Act's protections, it could have done so. No matter

---

[3]We added the emphasis.

[4]*See* Cal. Gov't Code § 12940; Colo. Rev. Stat. § 24-34-402; Conn. Gen. Stat. § 46a-60; Del. Code Ann. tit. 19, § 710; Haw. Rev. Stat. § 378-2; 775 Ill. Comp. State 5/1-102; Iowa Code § 216.6; Me. Rev. Stat. Ann. tit. 5 § 4572; Md. Code Ann. State Gov't § 20-606; Mass. Gen. Laws Ann. ch. 151B, § 4; Minn. Stat. § 363A.08; Nev. Rev. Stat. § 613.330; N.H. Rev. Stat. Ann. § 354-A:7; N.J. Rev. Stat. § 10:5-4; N.M. Stat. Ann. § 28-1-7; N.Y. Exec. Law § 296; Or. Rev. Stat. § 659A.030; R.I. Gen. Laws § 28-5-7; Vt. Stat. Ann. tit. 21, § 495; Wash. Rev. Code § 49.60.180; Wis. Stat. § 111.36; D.C. Code Ann. § 2-1402.11.

[5]Attempts to amend the Missouri Human Rights Act to prohibit discrimination based upon sexual orientation have repeatedly been introduced in the legislature but have repeatedly failed. Alex Edelman, *Show-Me No Discrimination: The Missouri Non-Discrimination Act and Expanding Civil Rights Protections to Sexual Orientation or Gender Identity*, 79 UMKC. L. Rev. 741 (2011).

how compelling Pittman's argument may be and no matter how sympathetic this court or the trial court may be to Pittman's situation, we are bound by the state of the law as it currently exists. Without the legislative addition of "sexual orientation" to the statutory list of protected statuses, the Missouri Human Rights Act does not prohibit discrimination based upon a person's sexual orientation.

"[C]ourts cannot rewrite the statutes the legislature in its wisdom has enacted no matter how much such rewriting is desired by a particular group." *Gross v. Merchants-Produce Bank*, 390 S.W.2d 591, 600 (Mo. App. 1965). "We cannot usurp the function of the General Assembly, or by construction, rewrite its acts." *Marshall v. Marshall Farms, Inc.*, 332 S.W.3d 121, 128 (Mo. App. 2010). Our role is limited to interpreting and applying the statute as it currently exists. "To substitute for the concept of the general assembly our view of what might be the more salutary public policy would be for us to legislate rather than to adjudge." *Lemasters v. Willman*, 281 S.W.2d 580, 590 (Mo. App. 1955). "Our function is to declare the law as we discover it in the text furnished us by the general assembly and when we have done so our authority ends." *Id*. "We must leave the law as it has been so long construed to stand as it reads until the general assembly sees fit to alter it." *Id*. Therefore, until the general assembly amends the Missouri Human Rights Act to include sexual orientation, discrimination based upon one's sexual orientation is not protected by the statute. The circuit court, therefore, astutely dismissed Pittman's petition for failure to state a claim because the Missouri Human Rights Act does not prohibit discrimination on the basis of sexual orientation

Pittman and the ACLU make several policy arguments advocating broad social change in Missouri regarding the rights of homosexuals. In support of their policy arguments, they assert that in interpreting the Missouri Human Right we should be guided by federal cases involving

6

Title VII. In particular, they rely on the United States Supreme Court's decision in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989). In that case, the Court held that, if gender stereotyping, i.e. discriminating against a person because he or she failed to conform to the employer's expectation as to how someone of his or her gender should behave, plays a motivating part in an employment decision, an employer "may avoid liability only by proving by a preponderance of the evidence that it would have made the same decision even if it had not taken the plaintiff's gender into account." *Id*. at 251 and 258. The Court stated:

> [W]e are beyond the day when an employer could evaluate employees by assuming or insisting that they matched the stereotype associated with their group, for in forbidding employers to discriminate against individuals because of their sex, Congress intended to strike at the entire spectrum of disparate treatment of men and women resulting from sex stereotypes.

*Id*. at 251 (internal quotation marks and citations omitted). *Price Waterhouse*, therefore, clarified that sex discrimination under Title VII comprises not only disparate treatment of women as compared to men, or vice versa, but also discrimination based upon gender stereotyping.[6]

We need not decide, however, whether or not the Missouri Human Rights Act prohibits sex discrimination based upon gender stereotyping because Pittman did not raise a gender stereotyping claim in his petition.[7] In his petition, Pittman merely alleged that the president of

---

[6]*Price Waterhouse* did not declare that a claim of discrimination based upon sexual orientation is cognizable under Title VII as a discrimination claim based upon sex. *Price Waterhouse* merely held that a plaintiff may prevail on a discrimination claim on the basis of sex under a gender stereotyping theory. Indeed, numerous federal courts have held that a claim of discrimination based upon sexual orientation is not cognizable under Title VII. See *Etsitty v. Utah Transit Auth.,* 502 F.3d 1215, 1222 (10th Cir. 2007); *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 764-65 (6th Cir. 2006); *Dawson v. Bumble & Bumble,* 398 F.3d 211, 217 (2d Cir. 2005); *Schroeder v. Hamilton Sch. Dist.,* 282 F.3d 946, 951 (7th Cir. 2002); *Bibby v. Phila. Coca Cola Bottling Co.,* 260 F.3d 257, 261 (3d Cir. 2001); *Higgins v. New Balance Athletic Shoe, Inc.,* 194 F.3d 252, 259 (1st Cir. 1999); *Wrighton v. Pizza Hut of Am., Inc.,* 99 F.3d 138, 143 (4th Cir. 1996); *Williamson v. A.G. Edwards & Sons, Inc.,* 876 F.2d 69, 70 (8th Cir. 1989).

[7] Pittman merely argued gender stereotyping in response to Cook Paper's motion to dismiss his petition and then again in his brief on appeal. Even then, Pittman merely asserted that "sexual stereotyping is a form of sex discrimination and is akin to discrimination on the basis of sexual orientation."

Cook Paper told him that "he was a 'cocksucker' and made other comments of a sexual nature, discriminatory to a male homosexual, including asking him if he had AIDS." Pittman further alleged that Cook Paper "discriminated against [him] because [Cook Paper] did not approve of the male companion that [he] had been seeing" and that Cook Paper "treated [him] more harshly than a male who was getting a divorce from his female wife." Finally, Pittman alleged that "[Cook Paper] caused the workplace to be an objectively hostile and abusive environment based on sexual preference." The petition is devoid of any allegation regarding gender stereotyping. Pittman did not claim that he was harassed because he failed to comply with societal stereotypes of how he ought to appear or behave. His claim was a simple and direct claim that he was discriminated against because of his sexual orientation.

Moreover, "[t]he [Missouri Human Rights Act] and Title VII are coextensive, but not identical, acts."[8] *Brady v. Curators of Univ. of Mo.,* 213 S.W.3d 101, 112 (Mo. App. 2006) (emphasis omitted). As the *Brady* court explained:

> These statutes create different causes of action. Missouri Courts have adopted federal Title VII case law when interpreting analogous discrimination statutes in

---

[8]We recognize that the United States Equal Employment Opportunity Commission recently handed down a decision in *Complainant v. Anthony Foxx, Secretary, Dep't of Transp. (Fed'l Aviation Admin), Agency*, EEOC DOC 0120133080, 2015 WL 4397641 (E.E.O.C. July 16, 2015), in which it declared that allegations of discrimination on the basis of sexual orientation state a claim of discrimination on the basis of sex under Title VII. This decision, however, is merely an administrative agency's interpretation of the words of a statute that the United States Congress enacted and is in no way binding on this court. We decline to rely on an administrative interpretation of the term "sex" under Title VII to declare the intent of the Missouri Legislature on a Missouri statute, especially on a matter that involves public policy. It is not our role to question the public policy values of a legislatively enacted scheme. Moreover, the United States Supreme Court has never declared that discrimination on the basis of sexual orientation states a claim of discrimination on the basis of sex under Title VII. Indeed, in the Supreme Court's recent decision finding that same-sex couples have the fundamental right to marry, the Supreme Court acknowledged that the Supreme Court of Hawaii had held that "Hawaii's law restricting marriage to opposite-sex couples constituted a classification on the basis of sex," *Obergefell v. Hodges*, 135 S.Ct 2584, 2596 (2015) (citing *Baehr v. Lewin*, 852 P.2d 44 (1993)), but the Supreme Court did not base its ruling upon the same rationale and instead concluded that the right to marry was" a fundamental right  inherent in the liberty of the person" under the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution. *Id*. at 2604. As previously stated, we maintain that it is not this court's role to rewrite the statutes that the legislature has enacted no matter how much such rewriting is desired by a particular group or, indeed, by this court or any other tribunal. Our role is limited to interpreting and applying the statute as it currently exists.

the Missouri Human Rights Act.  However, the MHRA is not merely a reiteration of Title VII.  The Act is in some ways broader than Title VII, and in other ways is more restrictive.  If the wording in the MHRA is clear and unambiguous, then federal case law which is contrary to the plain meaning of the MHRA is not binding.

*Id*. at 113 (citations omitted).  Contrary to Pittman's and the ACLU's contentions, the language of the Missouri Human Rights Act is clear and unambiguous:  it prohibits employment discrimination based on an individual's race, color, religions, national origin, sex, ancestry, age or disability.  It does not prohibit discrimination on the basis of sexual orientation.

### Conclusion

Because the Missouri Human Rights Act does not prohibit discrimination on the basis of sexual orientation, we affirm the circuit court's judgment dismissing Pittman's petition for failure to state a claim.

/s/ JAMES EDWARD WELSH
James Edward Welsh, Presiding Judge


James E. Welsh, Presiding Judge, writes for the majority.
Robert M. Clayton III, Special Judge, writes in a separate concurring opinion.
Anthony R. Gabbert, Judge, writes for the dissent.

9



# In the
# Missouri Court of Appeals
# Western District

JAMES PITTMAN,

        **Appellant,**

v.

**COOK PAPER RECYCLING CORP.,**

        **Respondent.**

**WD77973**

**FILED:  October 27, 2015**

### SEPARATE OPINION

    I respectfully and reluctantly concur in the opinion of Judge Welsh with respect to the result only.

 

                                      *Robert M. Clayton III*

                             ROBERT M. CLAYTON III, Special Judge



# In the
## Missouri Court of Appeals
### Western District

JAMES PITTMAN,

        Appellant,

v.

COOK PAPER RECYCLING CORP.,

        Respondent.

WD77973

FILED: October 27, 2015

## DISSENTING OPINION

I respectfully dissent. The majority opinion holds that "[t]he clear meaning prohibiting discrimination based upon 'sex' under the Missouri Human Rights Act concerns discrimination based upon a person's gender and has nothing to do with sexual orientation." Thus, the majority equates "sex" with "gender."

While there is no doubt that gender is encompassed in the meaning of sex, it does not equate to sex. "The plain meaning of words, as found in the dictionary, will be used unless the legislature provides a different definition." *Lincoln Industrial, Inc. v. Director of Revenue*, 51 S.W.3d 462, 465 (Mo. banc 2001). There is no requirement, therefore, that a specific definition be given preference over another in absence of a legislative definition. Even a cursory look in a dictionary by the majority would have led them to determine that, in fact, sex does not include only gender. Indeed, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1993) defines sex

as: (1) one of the two divisions of human beings respectively designated male or female; (2) the sum of the morphological, physiological, and behavioral peculiarities of living beings that subservesbiparental reproduction; (3) the sphere of interpersonal behavior especially between male and female most directly associated with, leading up to, substituting for, or resulting from genital union; and (4) the phenomena of sexual instincts and their manifestations.[9]

I would adopt the dictionary's definition of "sex" to be the plain meaning of sex in the Missouri Human Rights Act. As a result of this plain meaning, the definition of sex has expanded the majority's plain meaning of gender to allow for harassment or hostile workplace actions. In fact, I am not alone in recognizing this plain meaning of sex. As used in Title VII of the Civil Rights Act of 1964, "the term 'sex' encompasses both sex—that is the biological differences between men and women—and gender." *Complainant v. Foxx,* EEOC, Appeal No. 0120133080, pg. 5, fn. 3. "As the Eleventh Circuit noted in *Glenn v. Brumby*, 663 F.3d 1312, 1316 (11th Cir. 2011), six members of the Supreme Court in *Price Waterhouse*[10] agreed that Title VII barred 'not just discrimination because of biological sex, but also gender stereotyping— failing to act and appear according to expectations defined by gender.'" *Id.* "As such, the terms 'gender' and 'sex' are often used interchangeably to describe the discrimination prohibited by Title VII." *Id.*

Further, in *Complainant v. Foxx*, the EEOC concluded that "sexual orientation is inherently 'a sex-based consideration,' and an allegation of discrimination based on sexual orientation is necessarily an allegation of sex discrimination under Title VII." *Id.* at 6. In that

---

[9] The American Psychological Association also recognizes a difference between sex and gender. *See Definition of Terms: Sex, Gender, Gender Identity, Sexual Orientation*, found at **www.apa.org/pi/lgbt/resources/sexuality-definitions.pdf**.

[10] *Price Waterhouse v. Hopkins*, 490 U.S. 228, 239, 241-42 (1989).

case, the Complainant worked as a temporary supervisory air traffic control specialist for the Federal Aviation Administration (FAA) in a Miami, Florida airport. *Id.* at 1. The FAA issued a vacancy announcement for a permanent Front Line Manager position for which Complainant was eligible and his present position automatically qualified him for consideration. *Id.* at 2. Complainant claimed that management knew of his desire to obtain a permanent position and that he was well-qualified given his years of experience and familiarity with the Miami facility. *Id.* The FAA did not fill the front line position. *Id.* The Complainant filed a formal EEO complaint alleging that the FAA subjected him to discrimination on the bases of sex (male, sexual orientation) and reprisal for prior protected EEO activity when the FAA failed to select him for the permanent front line manager at the Miami airport. *Id.* at 1-2.

Unlike the EEOC's decision, the majority dismisses the argument that discrimination based on a person's sexual orientation is not a protected status in the Missouri Human Rights Act by noting that if the "Missouri legislature had desired to include sexual orientation in the Missouri Human Rights Act's protections, it could have done so." Yet, our Missouri Supreme Court has stated that "it is speculative to infer legislative approval from legislative inaction." *Medicine Shoppe Intern., Inc. v. Director of Revenue*, 156 S.W.3d 333, 334 (Mo. banc 2005). "Legislative inaction [] can just as well mean that the forces arrayed in favor of changing the law are matched by the forces against changing it." *Id.* "In truth, the match does not have to be an even one, for the legislative purpose in our republican form of government is designed more to prevent the passage of legislation than to encourage it." *Id.* Where our legislature used the broad term "sex," and that term has been defined in many realms and most recently by the EEOC to include sexual orientation, I prefer to believe that if one is looking to the legislature for guidance, the legislature's failure to exclude sexual orientation is more telling than its failure to

3

act to include. The majority's analysis suggests that a narrow, letter of the law interpretation must always be used in cases involving the Missouri Human Rights Act. However, this has historically not been the case as the Missouri Human Rights Act is a remedial statute.

In *Missouri Commission on Human Rights v. Red Dragon Restaurant*, 991 S.W.2d 161 (Mo. App. 1999), a restaurant refused entrance to a patron and her companions who were accompanied by guide dogs to aid their mobility. *Id.* at 164-65. The patron filed a timely complaint with the Missouri Commission on Human Rights alleging associational discrimination under the Missouri Human Rights Act. *Id.* at 165. The Commission found for the patron, and the restaurant appealed to the circuit court. The circuit court reversed the Commission's finding of associational discrimination on the basis that the legislative amendment to the controlling statute was not to be applied retroactively. *Id.* The Commission appealed to this court. *Id.* At the time of the incident, there was no case law in Missouri addressing whether associational discrimination was a cause of action under the Missouri Human Rights Act. *Id.* at 166. However, after the incident, the Missouri legislature added associational discrimination to the Missouri Human Rights Act. *Id.* Nevertheless, this Court reasoned that the legislature amended the Missouri Human Rights Act to *clarify* that associational discrimination is a covered form of discrimination. *Id.* (emphasis added). Thus, if following the reasoning in *Red Dragon*, action on the part of the Missouri legislature to add sexual orientation would only clarify that discrimination based on sexual orientation (or in this case preference) is discrimination based on sex.

Furthermore, when determining legislative intent, the *Red Dragon* court stated that "this court must bear in mind that '[r]emedial statutes [like the Missouri Human Rights Act] should be construed liberally to include those cases which are within the spirit of the law and all reasonable

4

doubts should be construed in favor of applicability to the case.'" *Id.* at 166-67 (quoting *State ex rel. Ford v. Wenskay*, 824 S.W.2d 99, 100 (Mo. App. 1992)(emphasis added). Consequently, I would find that Pittman did state a claim upon which relief could be granted. When analyzing a Motion to Dismiss, "[t]he pleadings are liberally construed and all alleged facts are accepted as true and construed in a light most favorable to the pleader." *Hedrick v. Jay Wolfe Imports I, LLC*, 404 S.W.3d 454, 457 (Mo. banc 2013). "If the petition sets forth any facts that, if proven, would entitle the plaintiffs to relief, then the petition states a claim." *Id.* The circuit court concluded that Count I of Pittman's petition alleging Sexual Discrimination/Harassment failed to state a claim because "he did not allege discrimination on the basis of 'sex' – the fact he was a man, being treated different than a woman. Rather, he alleged he was discriminated against because he was a homosexual." I disagree. While Pittman did allege that he was discriminated against because of his sexual orientation, he also alleged that "Defendant treated Plaintiff more harshly than a male who was getting a divorce from his female wife." In so alleging, he articulated that gender bias was associated with his claims. I find this sufficient to state a claim in light of our obligation to liberally construe the pleadings and the fact that jurisprudence in this area reveals that while straightforward gender bias allegations may meet the pleading requirements to state a claim for sexual harassment, in reality they are often illusory upon examination of the facts upon which they are based.

In *Gilliland v. Missouri Athletic Club*, Gilliland alleged that he, a male employee, was subjected to inappropriate sexual touching and harassment by a male manager where Gilliland was employed. 273 S.W.3d 516 (Mo. banc 2009). Gilliland ultimately quit his employment due to the alleged conditions. Gilliland also alleged that this manager inappropriately sexually touched and harassed several female employees. *Id.* Our Supreme Court stated: "The Missouri

5

Human Rights Act, like Title VII, prohibits sexual harassment regardless of the sex of the claimant or the harasser. In other words, the human rights act protects individuals against sexual harassment, a form of sex discrimination, by members of either the same or the opposite sex." Id. at 521 n8. There was no mention of the fact that Gilliland's allegations, in essence, pled that males and females alike were being mistreated by the employer and that technically Gilliland's allegations would not have met the pleading requirements for his workplace sexual harassment claim. To be fair, this issue was not before the court. Nevertheless, I think it is worthy to note that the jury in *Gilliland* found in favor of Gilliland on a constructive discharge claim that was not submitted under the human rights act, but in favor of the employer on all claims made under the human rights act. Although we have no way of knowing why, I believe that *Gilliland* is instructive in cases such as this to remind us that, ultimately, it is within the jury's province to assess the facts of the case and determine whether the facts fall within the elements of the alleged tort. It is within our province to liberally construe the pleadings and assess whether any of the allegations might entitle the plaintiff to relief.

The illusory nature of gender specific allegations is also found in our jurisprudence regarding student-on-student sexual harassment in the public school setting. In *Doe ex rel. Subia v. Kansas City, Missouri School Dist.*, this court applied the standard for co-worker sexual harassment claims to the public school setting, and found Doe's allegations sufficient to state a cause of action. Doe had alleged, in part, that he was sexually harassed and assaulted by another male student in the boys' restroom and that the harassment occurred on the basis of his gender. 372 S.W.3d 43, 55 (Mo. App. 2012). Yet, while the pleadings allege that the harassment occurred because of the child's gender, there is nothing in the facts of the case that suggest that it was the child's sex that prompted the other child to harass and assault him.

Given the fact that the Missouri Human Rights Act is a remedial statute to be construed liberally to include those cases within the spirit of the law with all reasonable doubts to be construed in favor of applicability to the case, I would find that Pittman stated a claim under the Missouri Human Rights Act and leave it for a jury to decide whether Pittman can prove the elements necessary to prevail on his claim of sexual harassment.

I would further find that, not only did Pittman's petition state a claim by his reference to gender bias, but that, under the spirit of the law, allegations of discrimination based upon a person's sexual orientation (or preference) and gender stereotype also state claims as they are encompassed by the term "sex" in the Missouri Human Rights Act. As the EEOC decision stated, "sexual orientation is inherently a 'sex-based consideration" because when an employer takes a person's sexual orientation into account the employer necessarily considers a person's sex. *Complainant v. Foxx* at 6. In other words, a person's sex is *always* considered when taking a person's sexual orientation into account. (E.g., homosexual, heterosexual). Thus, under the spirit of the law, sexual discrimination claims based on sexual orientation are actionable claims under the Missouri Human Rights Act.

Therefore, by the plain language and spirit of the law of the Missouri Human Rights Act, I would find that Pittman's petition states an actionable claim of sexual discrimination under the Missouri Human Rights Act.

/s/ ANTHONY REX GABBERT
Anthony Rex Gabbert, Judge

7