Charles PORTER, Appellant,

v.

REARDON MACHINE COMPANY, Respondent.

No. WD 54256.

Missouri Court of Appeals, Western District.

Feb. 24, 1998.

Gwen G. Caranchini, Kansas City, for appellant.

Stephen J. Briggs, Creath S. Thorne, Morton, Reed and Counts, St. Joseph, for respondent.

Before LAURA DENVIR STITH, P.J., and HANNA and RIEDERER, JJ.

LAURA DENVIR STITH, Judge.

Appellant Charles Porter appeals the grant of summary judgment to Respondent Reardon Machine Company, arguing that he established a cause of action under the public policy "whistleblower" exception to the employment at-will doctrine. Because we find that Mr. Porter failed to show that the matters he complained about constituted a violation of the constitution or a statute or regula-

tion or of a clear mandate of public policy, and because we find that he was terminated for refusing to perform his work rather than for whistleblowing, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In the light most favorable to Appellant, the facts show that he worked for Reardon Machine Company in St. Joseph, Missouri. Mr. Porter worked primarily as a welder, but he also performed various other jobs when there was not enough welding work. At one time, Mr. Porter was assigned to a process called "grinding," but he refused to do this kind of work. Mr. Porter also worked for a period of time in an area that produced liners, but eventually Mr. Porter refused to do that work, too. It is unclear what type of work he was performing for Reardon when he was asked to undertake a project requiring lead welding.

Mr. Porter was assigned to the lead welding operation. While performing these duties, he made a number of oral complaints to his supervisors about the adequacy of the ventilation in Reardon's lead welding operation and the adequacy of the face masks provided by Reardon for lead welding. John Clayton, a supervisor for Reardon, discussed Mr. Porter's concerns with Andy Wood, another Reardon supervisor. On October 8, 1993, approximately three weeks prior to Mr. Porter's termination, Mr. Wood informed Karen Reardon that Mr. Porter continued to complain, that Mr. Porter had stated he was considering calling the EPA about the safety of Reardon's lead operation, and that Mr. Porter was refusing to do the lead welding work. On that date, Karen Reardon met with Mr. Porter and gave him a verbal warning for his complaints and refusal to do lead welding.

At the beginning of the day on October 27, 1993, Mr. Porter told Mr. Clayton that he refused to perform any further lead welding for "safety reasons." Mr. Clayton reported that refusal to Mr. Wood. Mr. Porter testified in his deposition that he told Mr. Clayton and Mr. Wood that he was going to call the EPA. Joseph Reardon (owner of Reardon), Mrs. Reardon, and Mr. Wood met with Mr. Porter approximately thirty minutes later. Mr. Porter was given a written warning on that date, which he signed. That warning stated:

> Charlie has complained on numerous occasions about our lead pouring and welding operation. Frequent arguments with others in area. Moving lead welding to center of building away from ventilation. *Threats to call EPA.*

Mr. Reardon informed Mr. Porter that if he refused to do lead welding there was no other work for him to do. The last thing Mr. Porter said when he left Mr. Reardon's office was that he was going to call the EPA. Mr. Reardon offered to give Mr. Porter the EPA's number. The EPA number was also provided to Mr. Porter on his complaint form.

October 27, 1993, was Mr. Porter's last day of work. The parties dispute whether Mr. Porter was actually terminated on that day, or whether they simply sent him home since he refused to work on welding and they had no other project at that time which he could work on. The record does show that Mr. Reardon wrote Mr. Porter a letter dated November 5, 1993, in which Mr. Reardon stated that they had unsuccessfully tried to contact Mr. Porter by telephone. The letter also stated:

> We have welding work for you at this time, if you are willing to improve your attitude in working with others and doing the job required without continuous complaints.

> We have talked to Frank, who has passed our message on to you about your employment, but you have failed to respond to us. We need a welder and are taking applications at this time. Please let use know by noon on Wednesday, November 10, 1993 before we make a decision on a welder. Your insurance is being carried through November 27, 1993.

In response, Mr. Porter wrote a letter to Mr. Reardon stating that he needed the income and would like to come back to work, but he still had concerns about the lead operation. Mr. Porter said, "It is unfamiliar territory for me and my instinct tells me that it is unsafe." Mr. Porter indicated that he

was willing to come back to work if Reardon tested the air that the employees in the lead operation were breathing. On November 11, 1993, Mr. Reardon wrote back to Mr. Porter. That letter stated:

> We have a business to run and cannot be held back because of the refusal of an employee to do a job. We have taken the suggested precautions in our lead welding operation according to the M.S.D.S. for lead and the suggestions from Linweld (our welding supply vendor). The tests that you request are not easily obtainable at a moments notice. We have made several inquiries to places in Kansas City and St. Louis, and have the name of a place in Tennessee. We are waiting to hear from them.
>
> We need a welder immediately and find that we must have one by Monday, November 15, 1993. Your refusal to work in the plating area and grinding area leaves us with an open position. This position will be filled and we cannot wait until your requested tests are completed. Therefore unless you wish to work under our terms, we have no further need for you in our company.
>
> Please let us know of your decision by Friday, November 12. You are a very talented welder, and we hate to lose your services, but we must continue to conduct our business with the services of a welder.

Reardon claims, based on this correspondence, that Mr. Porter was not terminated until he refused to return to work on November 15, 1993. For the purposes of determining whether summary judgment was proper, however, we accept Mr. Porter's position that he was terminated on October 27, 1993.

Mr. Porter filed suit against Reardon claiming that he was fired in retaliation for threatening to report Reardon's safety violations to government authorities. His Petition alleged:

> 16. Porter considered himself fired [on October 27, 1993] because he had continued to complain about the "lead welding operation" and because he had threatened RMC with calling EPA/OSHA. To Porter, Exhibit A [the written warning of October 27, 1993] confirmed that was why he was fired.
>
> 17. After October 27, Joe Reardon attempted, by telephone and letter, to rehire Porter by asking him to come back to work if he would stop complaining.
>
> 22. Porter by the above acts has engaged in "whistleblowing", an exception to the Missouri "at will" employee doctrine.
>
> 23. As a direct and proximate result of Porter's "whistleblowing", Porter was fired and has since suffered loss of income....

Following discovery, the parties filed cross motions for summary judgment. Mr. Porter argued he had proved he was fired for whistleblowing. In support, Mr. Porter stated, "Defendant (through Joe Reardon, Karen Reardon and Andy Clayton) all admit that Porter reported complaints about violations of law or regulations or he threatened to report the company to a government agency.... That thereafter Porter was discharged." Reardon argued that the facts asserted by Mr. Porter established that he was fired for refusing to perform his job of lead welding, not for whistleblowing. On March 7, 1997, the trial court granted summary judgment in favor of Reardon. The court's entry of summary judgment stated in part:

> Plaintiff was, twice, granted leave to amend his Petition for Damages to conform with the *Adolphsen [v. Hallmark Cards, Inc.,* 907 S.W.2d 333 (Mo.App.W.D. 1995)] specificity requirement. The allegations giving rise to the cause of action and upon which the Plaintiff pleads his entitlement to recovery under the "limited public policy exception" to the at-will employment doctrine, are generalized complaints about the workplace of Defendant, including ventilation of the work area and inadequate face masks, not the specific acts of misconduct examined by the Court recently in *Olinger v. General Heating & Cooling Co.,* 896 S.W.2d 43 ([Mo.App. ]W.D., 1994) and *Clark v. Beverly Enterprises–Missouri, Inc.,* 872 S.W.2d 522 ([Mo.App.]W.D., 1994). The Court is not persuaded that the Defendant's alleged violations of the sections of the *Code of Federal Regulation* to which the Court is

cited by Plaintiff in his Petition are, if true, "serious misconduct that constitutes violations of the law and of such well established and clearly mandated public policy" that the Court in *Boyle [v. Vista Eyewear, Inc.,* 700 S.W.2d 859], at page 878 [(Mo.App.W.D.1985)], has made actionable. The Court finds that Plaintiff has not cited in the response to Defendant's *Motion for Summary Judgment* or elsewhere his ability to produce any evidence sufficient to allow the trier of fact to find the existence of this element of his claim or, contrarily, to dispute the existence of facts sufficient to support Defendant's properly-pleaded affirmative defense (paragraph 7 of Defendant's *AFFIRMATIVE DEFENSES* ).

Under Plaintiff's theory, any at-will employee can complain generally about the safety of his or her workplace without being required to present any corroborative evidence for this subjective belief and, under threat of lawsuit, refuse to perform the job for which he or she was hired; literally being able to dictate the physical environment of a given workplace. Any employee, if dissatisfied with a job, could complain to a supervisor or threaten to call the E.P.A., O.S.H.A. or another public authority, and if the employee is later discharged or replaced, state a submissible cause of action for damages against the employer which could contain a prayer for punitive damages. This Court is not persuaded that such is the law in the State of Missouri.

This appeal followed.

## II. STANDARD OF REVIEW OF GRANT OF SUMMARY JUDGMENT

Missouri Supreme Court Rule 74.04 governs summary judgment. The propriety of summary judgment is purely an issue of law which we review *de novo. ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993); *Bonds v. Missouri Dep't of Mental Health,* 887 S.W.2d 418, 421 (Mo.App.1994). We look to the entire record to determine whether there is any issue of material fact and whether the moving party was entitled

to judgment as a matter of law. *Dial v. Lathrop R–II Sch. Dist.,* 871 S.W.2d 444, 446 (Mo. banc 1994). We view the record in the light most favorable to the party against whom summary judgment was entered, and will affirm if the judgment is sustainable as a matter of law under any legal theory. *ITT,* 854 S.W.2d at 376.

■ "A movant's right to judgment as a matter of law differs significantly depending upon whether that movant is a 'claimant' or a 'defending party.' " *ITT,* 854 S.W.2d at 381. Because Reardon is a "defending party," to be entitled to summary judgment it needed to show:

> (1) facts that negate *any one* of the claimant's elements facts, (2) that the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of *any one* of the claimant's elements, or (3) that there is no genuine dispute as to the existence of *each* of the facts necessary to support the movant's properly-pleaded affirmative defense.

*ITT,* 854 S.W.2d at 381; Rule 74.04(b).[1]

## III. WRONGFUL TERMINATION

■ Under Missouri law, employees without an employment contract are considered employees at-will. Historically, an employer could discharge an employee at-will with or without cause, unless that employee was protected from discharge by a specific statutory provision. *Johnson v. McDonnell Douglas Corp.,* 745 S.W.2d 661, 662 (Mo. banc 1988). In 1985, however, this Court recognized a public policy exception to the employment at-will doctrine in *Boyle v. Vista Eyewear, Inc.,* 700 S.W.2d 859 (Mo.App. 1985). *Boyle* noted that four distinct categories of public policy exceptions have been recognized by other jurisdictions and held that these categories of public policy exceptions would be recognized in Missouri, also. Those exceptions provide an employee with a cause of action for wrongful discharge if the employee was discharged for: (1) refusing to

---

1. The denial of summary judgment is not appealable. *Gilmore v. Erb,* 900 S.W.2d 669, 671 (Mo.

App.1995); *Hammer v. Waterhouse,* 895 S.W.2d 95, 99 (Mo.App.1995).

perform an illegal act or an act contrary to a strong mandate of public policy; (2) reporting wrongdoing or violations of law or public policy by the employer or fellow employees to superiors or third parties; (3) acting in a manner public policy would encourage, such as performing jury duty, seeking public office, or joining a labor union; or (4) filing a workers' compensation claim. *Boyle,* 700 S.W.2d at 873–75. These exceptions have been repeatedly recognized in opinions by the Missouri Courts of Appeals. *See, e.g., Shawcross v. Pyro Prod., Inc.,* 916 S.W.2d 342 (Mo.App.1995); *Lynch v. Blanke Baer & Bowey Krimko, Inc.,* 901 S.W.2d 147 (Mo. App.1995); *Olinger v. General Heating & Cooling Co.,* 896 S.W.2d 43 (Mo.App.1994); *Clark v. Beverly Enterprises–Missouri, Inc.,* 872 S.W.2d 522 (Mo.App.1994). As we noted in *Faust v. Ryder Commercial Leasing & Services,* 954 S.W.2d 383, 389 (Mo.App.1997), although the Missouri Supreme Court has not specifically adopted the public policy exception to the employment at-will doctrine, it acknowledged that various court of appeals decisions had recognized a public policy exception in *Johnson v. McDonnell Douglas Corp.,* 745 S.W.2d 661, 663 (Mo. banc 1988), and *Luethans v. Washington Univ.,* 894 S.W.2d 169, 171 n. 2 (Mo. banc 1995), without overruling them.

*A. The Employee Must Actually "Blow the Whistle" to Superiors or Outside Authorities to Invoke the Whistleblower Exception.*

■ Mr. Porter brought this case under the second category of the public policy exception. This category, which protects employees discharged for reporting wrongdoing, is commonly referred to as the "whistleblower" exception. Reardon alleges that this exception does not apply because Mr. Porter did not report Reardon's alleged wrongdoing to outside authorities until after he says he was terminated; he therefore could not have been terminated for making such a report.

In *Adcock v. Newtec, Inc.,* 939 S.W.2d 426 (Mo.App.1996), the Eastern District held that in order to state a claim for wrongful discharge, the employee must report the wrongdoing to "the proper authorities." In that case, the plaintiff had written a note to a fellow employee questioning payment to a secretary for hours not actually worked. The Eastern District held that the plaintiff was not a "whistleblower" because he had never reported the wrongdoing to "law enforcement authorities or employer security persons." *Id.* at 429.

Other cases, including *Faust v. Ryder Commercial Leasing & Services,* 954 S.W.2d 383 (Mo.App.1997), explicitly state that the "whistleblower" category of the public policy exception protects employees that appropriately report to "superiors or the proper authorities." In *Faust,* Judge Smith distinguished between "external whistleblowing," which is whistleblowing to a third party, and "internal whistleblowing," which is whistleblowing to the employer. *Id.* at 390. The *Faust* plaintiff confronted his supervisor with his belief that the supervisor was stealing from the company. The Court acknowledged that this category of the public policy exception protects employees discharged for reporting violations of law or public policy to "proper authorities," and that the definition of "proper authorities" includes the employer in some circumstances. It concluded that the supervisor was not a proper authority in *Faust,* however, because the supervisor who Faust reported to was also the wrongdoer. This did not "blow the whistle" at all and so was not protected by the whistleblower exception. *Id.* at 390–91.

*Lynch v. Blanke Baer & Bowey Krimko, Inc.,* 901 S.W.2d 147 (Mo.App.1995), even more explicitly recognized that whistleblowing can occur if proper company authorities are notified of wrongdoing. In that case, the plaintiff distributed memoranda at executive committee meetings notifying committee members that the company was not satisfying federal regulations regarding water activity in food products. There is no indication that the plaintiff ever reported this alleged wrongdoing to law enforcement authorities or federal agencies. The plaintiff was later discharged and brought suit for wrongful discharge. The trial court granted a directed verdict for the defendant employer. The Eastern District reversed and remanded. It found that the plaintiff made a submissible

case despite the fact that he had not reported to outside authorities, noting that "[h]is theory, supported by competent evidence, is that he was fired for reporting to his superiors, (the executive committee in general and Bryant in particular) violations of the FDA's regulations." *Id.* at 151.

Here, as in these cases, we hold that Mr. Porter's reporting to his superiors that wrongdoing occurred was adequate to meet the "whistleblowing" requirement. He was not required to prove that he had also contacted outside authorities.[2]

### B. The Employee Must "Blow the Whistle" about Activities Violating the Constitution, a Statute, a Regulation, or Other Clear Mandate of Public Policy.

■ The public policy exception to the at-will employment doctrine also requires proof of violation of a constitutional provision, a statute, a regulation, or other clear mandate of public policy. *Luethans v. Washington Univ.*, 894 S.W.2d 169, 171 n. 2 (Mo. banc 1995). This requirement can be met by proof that the discharge itself was specifically prohibited by constitution, statute, or regulation. For example, in *Luethans*, the plaintiff alleged that he was fired for reporting abuses of laboratory animals to his superiors. A specific federal regulation prohibited reprisals or discrimination against employees for reporting violations of any regulation or standard under the Animal Welfare Act. This provided a basis for suit, although the Court ultimately held that the employee was a contract employee and therefore exceptions to the employment at-will doctrine did not apply. *Id.* at 170.

Similarly, in *Shawcross v. Pyro Prod., Inc.*, 916 S.W.2d 342 (Mo.App.1995), the plaintiffs alleged that they were fired in retaliation for filing complaints regarding safety problems in the workplace in violation of a federal statute which specifically prohibited employers from discharging an employee for filing such a complaint. *Id.* at 344. This statute provided a basis for the action. In *Clark v. Beverly Enterprises–Missouri, Inc.*, 872

S.W.2d 522 (Mo.App.1994), the plaintiff similarly alleged that she was fired for reporting abuse and neglect at a nursing home facility in violation of a state statute which provided that an employer could not dismiss an employee for reporting a violation of the laws, ordinances, or regulations applying to nursing home facilities. *Id.* at 525. She also stated a claim.

■ Other cases, such as *Adolphsen v. Hallmark Cards, Inc.*, 907 S.W.2d 333 (Mo. App.1995), have recognized that a claim can be made under the whistleblower exception even where a statute or regulation does not specifically provide that an employee cannot be dismissed for reporting the particular conduct in question. However, in order to show that the discharge constitutes a violation of public policy and thus should fall within an exception to the employee at-will doctrine, the employee must still demonstrate that he was fired because he reported the violation of a law, as embodied in a statute, regulation, or constitutional provision, and that the firing was in violation of a clear mandate of public policy. As *Adolphsen* stated:

> The [Missouri Supreme] court seems to be saying that the exception provides protection when a discharge is based upon an employee's act of reporting a violation of the law, or upon an employee's refusal to violate the law. 'The law' refers specifically to a constitutional provision, a statute, or a regulation based on a statute. Thus, it seems that the court, on occasions when it had the opportunity to reassert the view it took in *Dake v. Tuell* that wrongful discharge cases can be based only on statutory provisions protecting workers from discharge, has declined to do so.

*Id.* at 336. *See also Gannon v. Sherwood Medical Co.*, 749 F.Supp. 979, 981 (E.D.Mo. 1990).

In *Adolphsen*, the plaintiff was an employee at Hallmark Cards, Inc. The plaintiff told his supervisor that the department was violating Federal Aviation Administration safety regulations and regulations published by an airplane manufacturer. The plaintiff also

---

**2.** Because of our resolution of this issue, we need not reach the issue whether Mr. Porter's threat to

report to the EPA would have been adequate to invoke the whistleblower exception.

prepared a summary for Hallmark's CEO. Eventually, the plaintiff was terminated, and he filed a petition alleging wrongful discharge. The trial court granted Hallmark's motion to dismiss, and the plaintiff appealed.

On appeal, we held that the petition did not adequately "detail the nature of [the plaintiff's] complaints concerning the violation of regulations, or the content of the regulations violated. The petition also does not inform us as to whether the violations are criminal in nature, nor as to the extent of the safety risk involved in the failure to comply with regulations." *Adolphsen*, 907 S.W.2d at 337. Although the plaintiff pleaded that Hallmark had violated federal regulations and that he had reported these violations to the CEO, he did not "identify a regulation which he contends was violated, nor did he identify the applicable clear mandate of public policy." *Id.*

This approach was also taken in *Lynch v. Blanke Baer & Bowey Krimko, Inc.*, 901 S.W.2d at 151. The plaintiff alleged that he had been fired for reporting violations of federal regulations to his superiors. No statute or regulation specifically forbade firing employees for reporting violations of the law. Rather, the regulations involved requirements of water activity and pH levels in food products. Nevertheless, the Eastern District of this Court stated that the plaintiff had made a submissible claim under the public policy exception to the employment at-will doctrine. Similarly in *Olinger v. General Heating & Cooling Co.*, 896 S.W.2d 43 (Mo. App.1994), the plaintiff alleged that she had been fired for reporting to the FBI conduct by her employer which eventually resulted in the company's conviction for mail fraud. No statute or regulation prohibited the employer from firing the employee, but this Court denied the employer's claim on appeal that the trial court had erred in submitting the plaintiff's claim for wrongful discharge to the jury. *Id.* at 46.

■ We thus hold that Mr. Porter was not required to show that his discharge was explicitly prohibited by statute, but, as in *Adolphsen*, he was required to show "the legal provision violated by the employer, and it must affirmatively appear from the face of the petition that the legal provision in question involves a clear mandate of public policy," and that he was fired for reporting a violation of that provision. *Adolphsen*, 907 S.W.2d at 338–39.

■ Here, Mr. Porter alleged that he was fired for reporting that the face masks and ventilation used by Reardon were inadequate and in violation of federal law. Missouri is a fact-pleading state, however. Mere conclusory allegations are insufficient. Mr. Porter was required to plead how the masks and ventilation used by Reardon were in violation of law and what public policy was violated. Here, Mr. Porter did not plead, or show in opposition to summary judgment, that any conduct by Reardon, including its ventilation system or its manner of use or type of face masks, violated a constitutional provision, statute, regulation, or that it violated a clear mandate of public policy.

Mr. Porter did claim in his Second Amended Petition that Reardon had "inadequate" ventilation in its welding operation, was melting down old lead from its chrome plating process, allowed lead to be spilled on the floor, and used "inadequate" face masks. In an effort to identify what statute or regulation was violated by this conduct, the Petition alleged that these acts were civil violations of 29 U.S.C. § 631 *et seq.*, which it said "provides for safety regulations in the handling of hazardous materials, including lead," and of 29 U.S.C. § 651 *et seq.*, which it states "provides for procedures that must be followed by employers." These statements, however, are inaccurate. 29 U.S.C. § 631 deals with the age limits of various labor regulations. 29 U.S.C. § 651 is entitled "Congressional statement of findings and declaration of purpose and policy." There is no mention of safety procedures for use in lead welding operations in these sections, and we are not directed to any other provisions of these chapters which deal with lead welding.

Mr. Porter's Second Amended Petition did allege that Reardon's acts were civil violations of CFR 1910.1025(f)(2)(iii), 29 CFR 1910.1025(F)(4)(I), 29 CFR 1910.134(b), (d), (e), and (f), 29 CFR 1910.1200(e)(1), and 29 CFR 1910.1200(f), (g), and (h). However,

neither the Petition nor Mr. Porter's subsequent pleadings, either below or on appeal, explain what aspects of these regulations were allegedly violated by Reardon. We have nevertheless reviewed the regulations *ex gratia.* We find each regulation contains numerous subsections dealing with diverse occupational safety and health topics. They set forth multiple requirements of federal law. Some of these are of minor importance (such as mandating that any vacuums used should be "used and emptied in a manner which minimizes the reentry of lead into the workplace," 29 C.F.R. § 1910.1025(h)(3) (1997)), while others are basic prerequisites for safety (such as requiring the employer to provide respirators "when such equipment is necessary to protect the health of the employee," 29 C.F.R. § 1910.134(a)(2) (1997)). Because none of the provisions can be tied in specifically with the claims here, however, we are unable to determine from the pleadings or the record which, if any, of these regulations Mr. Porter is claiming were violated. Moreover, during the summary judgment hearing, Mr. Porter's counsel stated in response to a direct question on this issue from the court that he would not be able to present any evidence at trial that Reardon had violated any OSHA or EPA regulations because Reardon had completed its lead welding operation before Mr. Porter could get the operation inspected.[3]

As noted, pursuant to *Adolphsen,* the Petition must specify the legal provision violated by the employer. 907 S.W.2d at 338. The trial court was well aware of this requirement, and specifically stated in his order granting summary judgment, "Plaintiff was, twice, granted leave to amend his Petition for Damages to conform with the *Adolphsen* specificity requirement," yet had not done so. We agree with the trial court's assessment. Because Mr. Porter failed to meet *Adolphsen*'s requirements that he specify the legal provision violated by the employer and show that it involves a clear mandate of public policy, summary judgment was properly granted.

### C. Proof of Firing Due to Whistleblowing.

Even were Mr. Porter to prove that the conditions of which he complained to his superiors constituted violations of statutes or regulations meeting the requirements set out in *Adolphsen,* his claim would fail. He failed to present evidence from which the jury could find he was fired for complaining to his superiors, which is the essence of whistleblowing. The facts set out above leave no question but that Reardon was willing to employ Mr. Porter despite his complaints, and that it fired him because he refused to do his job due to his belief that the ventilation and face masks were inadequate.

Of course, an employer may not fire an employee for refusing to perform an act which is illegal or contrary to a strong mandate of public policy. Missouri has recognized this as one of the four public policy exceptions to the at-will doctrine. In *Kirk v. Mercy Hosp. Tri–County,* 851 S.W.2d 617 (Mo.App.1993), the Southern District held that the plaintiff, a registered nurse, adequately pled a claim which could survive summary judgment by alleging that she was fired after questioning a doctor's care for a patient. The court noted that the Nursing Practice Act obligated the plaintiff to serve the best interests of her patients. *Id.* at 622. When the plaintiff's supervisor ordered her to "stay out of it," she essentially ordered the plaintiff to violate her duties under the Nursing Practice Act, a clear mandate of public policy. This stated a claim under an exception to the employment at-will doctrine.

Mr. Porter failed to plead that his firing violated this exception, however, failed to argue its application below, and denied reliance on this provision on appeal. We presume he has taken this tack because he is unable to prove one or more elements of this exception, such as proof that the activity Mr. Porter refused to perform was actually illegal or contrary to a strong mandate of public

---

**3.** Mr. Porter did claim in oral argument that he had proof OSHA cited Reardon for using unapproved respirators. That citation is not in the appellate record and apparently was not before the trial court, however, and we have no basis to judge its subject or its relevance, if any, to Mr. Porter's complaints prior to his termination.

policy. In any event, Mr. Porter chose to proceed on a whistleblower theory. Mr. Porter has failed to meet its requirements in the respects noted. Accordingly, we affirm.

All concur.