Rodney D. BAREKMAN,
Plaintiff–Appellant,

v.

CITY OF REPUBLIC, Missouri,
Defendant–Respondent.

No. 27939.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 11, 2007.

Richard Don Crites, Springfield, MO, for Appellant.

M. Douglas Harpool, Springfield, MO, for Respondent.

JEFFREY W. BATES, Chief Judge.

Rodney Barekman (Barekman) sued his employer, the City of Republic (City), for sexual harassment and retaliatory discharge in violation of § 213.055 and § 213.070.[1] The trial court granted the City's motion for summary judgment, and Barekman appealed. We affirm the trial court's decision to grant summary judgment on Barekman's sexual harassment claim. The trial court erred, however, in granting summary judgment on the retaliatory discharge claim. Therefore, the case is remanded for further proceedings.

## I. Standard of Review

 In determining whether the trial court properly granted summary judgment, we employ a *de novo* standard of review. *City of Springfield v. Gee,* 149 S.W.3d 609, 612 (Mo.App.2004). Consequently, we do not defer to the trial court's decision to grant summary judgment.

*Murphy v. Jackson Nat'l Life Ins. Co.,* 83 S.W.3d 663, 665 (Mo.App.2002). Instead, we use the same criteria the trial court should have employed in initially deciding whether to grant the City's motion. *Stormer v. Richfield Hospitality Services, Inc.,* 60 S.W.3d 10, 12 (Mo.App.2001). We view the record in the light most favorable to the party against whom judgment was entered, and we accord that party the benefit of all inferences which may reasonably be drawn from the record. *ITT Commercial Finance Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). "The propriety of summary judgment is purely an issue of law." *Id.*

As the opinion in *ITT* explains, Rule 74.04 distinguishes between motions for summary judgment filed by a "claimant" and by a "defending party." *Id.* at 380.[2] Here, the City was the defending party. A defending party "may establish a right to summary judgment by showing: (1) facts negating any one of the claimant's elements; (2) that the party opposing the motion has presented insufficient evidence to allow the finding of the existence of any one of the claimant's elements; or (3) that there is no genuine dispute as to the existence of each of the facts necessary to support a properly pleaded affirmative defense." *Ameristar Jet Charter, Inc. v. Dodson Intern. Parts, Inc.,* 155 S.W.3d 50, 58–59 (Mo. banc 2005).

## II. Factual and Procedural Background

Barekman began working for the City as a police officer in June 1995. At that time, Theresa Sweet (Sweet) was a full-time patrol officer. From June 1995 through early 1999, Sweet was one of Ba-

---

1. All reference to statutes are to RSMo (2000) unless otherwise specified.

2. All references to rules are to Missouri Court Rules (2007).

rekman's superiors. In an affidavit and a deposition, Barekman stated that he was subjected to sexual harassment by Sweet because she told jokes about male and female genitalia, talked about having to urinate, described her underwear, discussed her sex life and talked about various sexual acts in Barekman's presence. Nearly all of the other male and female police officers and other department employees engaged in such behavior. Members of both sexes made improper statements and used sexually explicit language in Barekman's presence. The "big joke in the entire department" was to engage in such conduct to see how quickly Barekman would become embarrassed and walk away. He was "constantly made the butt of everyone's crude jokes."

At some point, Barekman transferred to the Investigative Division. After the transfer, he requested that Sweet be assigned to that department. In May 2001, Barekman became Sweet's supervisor. After becoming Barekman's subordinate, Sweet kissed him on the cheek and gave him cards signed "Love" and "Love Ya." Barekman did not report the behavior or "write up" Sweet for her actions, although he was required to do so pursuant to City's sexual harassment policy. He gave Sweet good evaluations on her work performance. He gave gifts to Sweet, rubbed her neck and gave her a birthday card in November 2001 signed, "Love, Rodney."

In December of 2001, Sweet filed a complaint against Barekman. The complaint alleged that: (1) he was creating a hostile work environment; (2) he had sexually harassed Sweet; and (3) he was conducting outside business activities at work while on duty in violation of City policies. Barekman discussed Sweet's complaint with the acting Chief of Police Darrell Crick (Crick). According to Barekman, Crick said the complaint was "[n]o big

deal. You will just get a slap on the hands, and be told not to do that anymore." Crick asked Barekman to submit a response by January 16, 2002. In Barekman's response, he denied Sweet's allegations. He also complained that he had been subjected to repeated sexual harassment at work by Sweet. He had not reported it to the City earlier because he did not believe his complaint would be taken seriously since he was a male.

On February 8, 2002, the City sent a letter to Barekman requesting that he resign immediately or be fired. The City gave two reasons for this demand: (1) recent comments made by Barekman led the City to believe that he would "continue to engage in hostile, retaliatory behavior" which undermined the City; and (2) an internal investigation had confirmed multiple instances in which Barekman used City property to conduct private business. The letter made it clear that Barekman's employment by the City was over:

> Your behavior as a City employee and supervisor is not acceptable. Therefore, I am requesting your letter of resignation immediately. If I do not receive your signed letter of resignation by 5:00 p.m., Monday, February 11, 2002, you will be terminated at that time.

On February 11, 2002, Barekman resigned under protest. He chose to resign for two reasons. First, his resignation allowed him to get paid for his accrued and unused vacation and comp time. Second, if he had been fired, the Missouri Department of Public Safety could have filed an action to revoke his peace officer's license. Without that license, Barekman could not work in law enforcement.

In March 2002, Barekman filed a verified complaint with the Missouri Human Rights Commission. The complaint stated that: (1) he had been sexually harassed by Sweet; (2) he reported her conduct to the

City; (3) and he was forced to resign. The complaint then stated:

> The conduct of the [City] was retaliatory on its part for raising the sexual harassment and hostile work environment created by Officer Sweet. I was told by the City Administrator, Dean Thompson, that my complaint against Officer Sweet was being viewed as "sour grapes" and nothing had been done nor would be done about my complaint.

In December 2002, Barekman sued the City. The petition alleged that: (1) Barekman was exposed to a sexually hostile work environment because Sweet and other police officers used sexually-oriented and suggestive language in front of Barekman, which embarrassed him; and (2) he had been constructively discharged in retaliation for complaining about Sweet's behavior. In May 2005, the City filed a motion for summary judgment. After Barekman filed his response and the parties submitted suggestions, the trial court held a hearing on the motion. In June 2006, the City was granted summary judgment. This appeal followed.

### III. Discussion and Decision

 In Barekman's first point, he challenges the trial court's decision to grant summary judgment on his sexual harassment claim. The Missouri Human Rights Act (MHRA) prohibits an employer from discriminating against any individual "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, national origin, sex, ancestry, age or disability[.]" § 213.055.1(1)(a). When reviewing a claim under the MHRA, "appellate courts are guided by both Missouri law and federal employment discrimination caselaw that is consistent with Missouri law." *Daugherty v. City of Maryland Heights*, 231 S.W.3d 814, 818 (Mo. banc, 2007).

 Sexual harassment creates a hostile work environment when sexual conduct either creates an intimidating, hostile or offensive work environment or has the purpose or effect of unreasonably interfering with an individual's work performance. *Mason v. Wal–Mart Stores, Inc.*, 91 S.W.3d 738, 742 (Mo.App.2002). "An employer is liable for the sexual harassment of one co-worker by another if the employer knew or should have known of the harassment and failed to take prompt and effective remedial action." *Id.* To prevail on a hostile work environment sexual harassment claim, Barekman had to prove the following ultimate facts: (1) he is a member of a protected group; (2) he was subjected to unwelcome sexual harassment; (3) his gender was a contributing factor in the harassment; (4) a term, condition, or privilege of his employment was affected by the harassment; and (5) the City knew or should have known of the harassment and failed to take appropriate action. *Daugherty*, 231 S.W.3d at 820; MAI 31.24; *see Cooper v. Albacore Holdings, Inc.*, 204 S.W.3d 238, 244 (Mo.App. 2006); *Mason*, 91 S.W.3d at 742.[3] If Barekman failed to present sufficient evidence to allow an affirmative finding to be made on any one of the foregoing elements, the City was entitled to summary

---

**3.** *Mason* and *Cooper* state that the third element of this type of claim is "the harassment was based upon sex[.]" In *Daugherty*, our Supreme Court held that, in a claim involving a violation of § 213.055, a plaintiff is not required to prove "that discrimination was a substantial or determining factor in an employment decision; if consideration of age, disability, or other protected characteristics contributed to the unfair treatment, that is sufficient." *Daugherty*, at 819. Therefore, we have revised the third element of the claim to be consistent with *Daugherty*.

judgment on Barekman's hostile work environment claim. *See Ameristar Jet Charter, Inc. v. Dodson Intern. Parts, Inc.*, 155 S.W.3d 50, 58–59 (Mo. banc 2005). The City argues that Barekman failed to prove the third element of this claim. This issue is dispositive of the first point on appeal.

■ As noted above, § 213.055.1(1)(a) prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex...." In Barekman's brief, he argues that the third element of his claim was satisfied because "the conduct was sexual in nature, content, meaning and content of language. It is clear and beyond question but that [sic] Plaintiff was harassed because of his sensitivities to conduct, language, examples, and stories that were of an explicit, perverted and unwelcome sexual nature" in the workplace. As we apprehend the argument, Barekman contends that evidence of his exposure to sexual comments and discussions in the workplace is sufficient to prove he was the victim of gender discrimination. He cites no authority to support this interpretation of the statute.[4]

■ Like the MHRA, Title VII of the Civil Rights Act of 1964 also prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex...." 42 U.S.C.A. § 2000e–2(a)(1)(West 2003). In *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998), the United States Supreme Court noted that Title VII is only directed at discrimination because of sex and does not prohibit all verbal or physical

harassment in the workplace. *Id.* at 80, 118 S.Ct. 998. "We have never held that workplace harassment, even harassment between men and women, is automatically discrimination because of sex merely because the words used have sexual content or connotations." *Id.* Instead, a textual analysis of Title VII indicates that the critical issue is whether members of one gender are exposed to disadvantageous terms or conditions of employment to which members of the other gender are not exposed. *Id.* Thus, in order to prevail on this type of claim, a plaintiff always must prove that the conduct at issue constituted gender discrimination, and not just that the conduct was "tinged with offensive sexual connotations." *Id.* at 81, 118 S.Ct. 998. In *Schoffstall v. Henderson*, 223 F.3d 818 (8th Cir.2000), the district court granted summary judgment on the plaintiff's hostile work environment sexual harassment claim. The facts showed that the alleged harasser engaged in the same type of conduct with both genders and while both male and female employees were present. Applying the *Oncale* test, the Eighth Circuit held that summary judgment was properly granted because the plaintiff failed to prove that members of one sex were exposed to disadvantageous terms or conditions of employment to which members of the other sex were not exposed. *Id.* at 826–27.

■ Citing *Oncale* and *Schoffstall*, the City argues that Barekman failed to satisfy the third element of his hostile work environment claim. This Court agrees. Viewed in a light most favorable to Barekman, the undisputed facts before

---

**4.** "An appellant has an obligation to cite appropriate and available precedent if he expects to prevail, and, if no authority is available to cite, he should explain the reason for the absence of citations." *Brown v. Ameristar Casino Kansas City, Inc.*, 211 S.W.3d 145, 148 (Mo.App.2007).

the trial court failed to establish that male officers were exposed to disadvantageous terms or conditions of employment to which female employees were not exposed. According to the descriptions of events in Barekman's affidavit and deposition testimony, both male and female employees of the City police department were exposed to, and participated in, the conduct about which Barekman complains. "The use of foul language in front of both men and women is not discrimination based on sex." *Hocevar v. Purdue Frederick Co.*, 223 F.3d 721, 737 (8 th Cir.2000). The only reasonable inference to be drawn from the facts is that Barekman was the butt of other employees' jokes because he was sensitive to, and easily embarrassed by, such behavior. In short, Barekman has failed to establish a genuine issue of material fact concerning whether his gender was a contributing factor in his harassment. *Daugherty v. The City of Maryland Heights*, 231 S.W.3d 814, 819 (Mo. banc, 2007); *Lowry v. Powerscreen USB, Inc.*, 72 F.Supp.2d 1061, 1070 (E.D.Mo.1999) (requiring that there be a causal nexus between the harassment and the plaintiff's gender). While the conduct of Barekman's fellow employees may have been boorish, vulgar and inappropriate, it does not constitute gender discrimination under the MHRA. *See Oncale*, 523 U.S. at 80–81, 118 S.Ct. 998; *McCown v. St. John's Health System*, 349 F.3d 540, 543–44 (8 th Cir. 2003); *Schoffstall*, 223 F.3d at 826–27. Therefore, the trial court did not err in granting summary judgment to the City on Barekman's hostile work environment sexual harassment claim. Point I is denied.

In Barekman's second point on appeal, he contends the trial court erred in granting summary judgment on the retaliatory discharge claim. This Court agrees. Viewed in a light most favorable to Barekman, his evidentiary submissions were suf-ficient to create a genuine issue of material fact that precluded the entry of summary judgment on this claim.

Sweet's sexual harassment complaint against Barekman was filed in December 2001. Barekman presented evidence that, initially, the complaint was not treated as a serious matter. According to Barekman, the acting Chief of Police said the complaint was "[n]o big deal. You will just get a slap on the hands, and be told not to do that anymore." Barekman was told to file a response by January 16, 2002. When he responded, however, he did more than just deny the accusations against him. He also complained that he had been the victim of long-term sexual harassment by Sweet that no one would take seriously because he was male. Thereafter, Barekman said he was told by the City administrator that nothing had been done or would be done about his complaint. Within three weeks, the City told Barekman to resign immediately or be fired. In Barekman's affidavit and deposition testimony, he stated that he was exposed to a sexually hostile work environment by Sweet and other police officers and that he had been constructively discharged in retaliation for complaining to the City about Sweet's behavior.

■ Sexual harassment creating a hostile work environment is a practice prohibited by Chapter 213. *See, e.g., Cooper v. Albacore Holdings, Inc.*, 204 S.W.3d 238, 244 (Mo.App.2006); *Mason v. Wal–Mart Stores, Inc.*, 91 S.W.3d 738, 742 (Mo.App. 2002). The MHRA makes it an unlawful discriminatory practice "[t]o retaliate or discriminate in any manner against any other person because such person has opposed any practice prohibited by this chapter...." § 213.070(2). Under the facts presented here, Barekman can establish a *prima facie* case of retaliation pursuant to this section by proving that: (1) he complained about being the victim of a sexually hostile work environment to the City;

and (2) as a direct result, he suffered damages due to an act of reprisal by his employer. *See Keeney v. Hereford Concrete Products, Inc.*, 911 S.W.2d 622, 625–26 (Mo. banc 1995). With respect to the latter element, Barekman must prove that the City purposely committed the act of reprisal because of Barekman's complaint. *See id.*

Barekman presented sufficient evidence, if believed by the trier of fact, to prove the following facts: (1) he complained to the City about being sexually harassed by Sweet at work; (2) the City refused to investigate the complaint; and (3) shortly after making the complaint, he was constructively discharged by the City.[5] The pivotal question here is the purpose underlying the City's demand that Barekman immediately resign or be fired. *Keeney*, 911 S.W.2d at 626. The City argues that it did so because of Barekman's response to Sweet's complaint against him and his violation of various City policies dealing with the conduct of private business at work. In Barekman's evidentiary submissions, however, he denied that he engaged in any retaliatory behavior. He also stated that any private business he did on City property was done with the express consent of the Chief of Police and that he stopped certain activities after being told to do so by the Chief. Furthermore, the closeness in time between the Barekman's complaint and the City's demand for his resignation or firing supports an inference of retaliatory motive. *See, e.g., Buettner v. Arch Coal Sales Co., Inc.*, 216 F.3d 707, 715–16 (8 th Cir.2000); *Rath v. Selection Research, Inc.*, 978 F.2d 1087, 1090 (8th Cir.1992). Summary judgment is particularly inappropriate when the underlying issue is one of state of mind, motivation, intent or some other subjective fact. *Hearod v. Baggs*, 169 S.W.3d 198, 205 (Mo.App.2005); *Ganaway v. Shelter Mut. Ins. Co.*, 795 S.W.2d 554, 562 (Mo. App.1990). Finally, "[s]ummary judgment should seldom be used in employment discrimination cases, because such cases are inherently fact-based and often depend on inferences rather than on direct evidence. Summary judgment should not be granted unless evidence could not support any reasonable inference for the non-movant." *Daugherty v. City of Maryland Heights*, 231 S.W.3d 814, 818 (Mo. banc, 2007).

A genuine issue of material fact exists when the record shows two plausible, but contradictory, accounts of the essential facts. *See ITT Commercial Finance Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The record here establishes a genuine issue of material fact as to whether the City's purpose or intent in demanding Barekman's immediate resignation or termination was to retaliate against him for complaining about sexual harassment in the workplace. Therefore, the trial court erred in granting summary judgment on Barekman's retaliatory discharge claim. Point II is granted.

The trial court's judgment on the sexual harassment claim is affirmed. The trial court's judgment on the retaliatory discharge claim is reversed. The case is remanded for further proceedings consistent with this opinion on the latter claim.

GARRISON, J, and BARNEY, J., concur.

---

5. The City's demand that Barekman immediately resign or be fired could amount to a constructive discharge by the City. *See, e.g., Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1188–89 (2 nd Cir.1987); *Welch v. University of Texas and Its Marine Science Institute*, 659 F.2d 531, 533–34 (5 th Cir.1981).