Margaret HUGHES and William
Hughes, Plaintiffs–
Appellants,

v.

FREEMAN HEALTH SYSTEM,
Defendant–Respondent.

No. SD 28921.

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 13, 2009.

Rehearing Denied March 6, 2009.

Jeffrey S. Monroe, Joplin, MO, for Appellants.

Jennifer A. Mueller, Springfield, MO, for Respondent.

DON E. BURRELL, Presiding Judge.

Margaret Hughes and William Hughes ("Plaintiffs") brought an action for monetary damages against Freeman Health System ("Hospital"). Margaret Hughes ("Nurse") had worked as a registered nurse for Hospital but was terminated from that employment on September 3, 2004. Counts I and III of Plaintiffs' petition claim Nurse had been wrongfully discharged and sought, respectively, compen-

satory and punitive damages. Count II was a claim by Nurse's husband, William Hughes, for loss of consortium. Hospital filed a motion for summary judgment in its favor as to all three counts. The trial court granted Hospital's motion and entered the summary judgment from which Plaintiffs now appeal.

Hospital's motion for summary judgment claimed it established, as a matter of law, that Hospital had terminated Nurse's employment because Nurse had failed to render proper care to a patient on August 30, 2004, and had failed to accurately inform physicians of the patient's condition. Plaintiffs' petition (and Nurse's subsequent deposition testimony) contended Nurse was terminated because she had refused to rewrite certain progress notes she had made in the patient's record that were critical of one of Hospital's physicians.[1]

Plaintiffs' sole point on appeal alleges the trial court erred in granting Hospital's motion for summary judgment because the record shows that a genuine issue of material fact exists as to the actual reason for Nurse's discharge and that the facts averred by Plaintiffs are sufficient to invoke the "public policy" exception to the employment-at-will doctrine that would otherwise bar Nurse's claim for wrongful discharge. We grant Plaintiffs' point and we reverse and remand.

## I. Standard of Review

Review of a summary judgment is *de novo* and its propriety "is purely an issue of law." *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). "[W]e do not defer to the trial court's decision to grant summary judgment. Instead, we use the same criteria the trial court should have employed in initially deciding whether to grant [the] motion." *Barekman v. City of Republic*, 232 S.W.3d 675, 677 (Mo. App. S.D.2007). "We view the record in the light most favorable to the party against whom judgment was entered, and we accord that party the benefit of all inferences which may reasonably be drawn from the record." *Id.*

## II. Facts and Procedural History

Viewing the record before the trial court in the light most favorable to Plaintiffs, the facts are as follows. Nurse, whose professional licensure is governed by The Nursing Practice Act, sections 335.011 to 335.096 ("NPA"), began working for Hospital as an employee-at-will in 1997. On August 30, 2004, Nurse was involved in the care of a patient who had been admitted for depression and alcoholism ("Patient"). Patient began experiencing problems Nurse believed to be a combination of anxiety and extrapyramidal symptoms ("EPS").[2] Nurse attempted to contact Dr. Nauphyll Zuberi, Patient's attending physician, but was unable to reach him so she called the on-call physician, Dr. Collins. Nurse documented Patient's symptoms in her progress notes and relayed them to Dr. Collins.[3] Nurse asked Dr. Collins to

---

1. The record does not reflect that a request was made for a service letter as permitted by section 290.140. Unless otherwise indicated, all references to statutes are to RSMo 2000.

2. EPS is a neurological disorder that can cause muscle spasms that can happen in different parts of the body—a usual side effect of the drug Haldol.

3. Hospital's motion for summary judgment seems to rely heavily on the fact that Nurse's written progress notes do not state that the symptoms she documented were then relayed by her to Dr. Collins. This difference between her oral testimony and written notes is a good example of the type of factual disputes that exist in this case and cannot be resolved without the making of a credibility determination; a task wholly incompatible with the mechanism of summary judgment.

allow her to administer Serax (an anti-anxiety drug) earlier than scheduled, but Dr. Collins refused her request. Nurse called Dr. Collins again and told him that Patient's symptoms were worsening. At Dr. Collins's request, Nurse read him the list of Patient's prescribed medications, and Dr. Collins ordered her to administer the drug Haldol.

After Nurse administered the Haldol, Patient's symptoms increased in intensity. At that point, Nurse asked another nurse to contact Dr. Collins and relay Patient's latest symptoms to him. This nurse called Dr. Collins and gave Patient Cogentin at Dr. Collins's direction. Nurse then called Dr. Collins a third time and was given permission to administer the drug Serax "like 45 minutes early, 30 minutes early, somewhere in there." Another physician came in to observe Patient and, on his orders, Benadryl was administered. After receiving the Benadryl, Patient relaxed and went to sleep. At no time on this date was Nurse ever criticized about the care she had provided to Patient.

Two days later, Nurse was asked by her supervisor ("Supervisor") and Hospital's Director of Behavioral Health to "take it out and rewrite" certain portions of her progress notes that had been indicated with brackets. The bracketed portions referred to Dr. Collins's refusal to allow an early administration of Serax and to his decision to have Cogentin administered to Patient. Hospital had a written policy regarding the writing of nurses' notes which stated: "[p]reviously written notes shall not be altered at a later date." Nurse rewrote her progress notes and took the revised version to Supervisor. Supervisor asked Nurse to also return the original progress notes that had been marked with the brackets, but Nurse refused because she had been advised by another employee to do so and "under the circumstances

[she] felt like [she] was protecting [herself]."

Later that afternoon, Supervisor brought Nurse the revised copy and said "[t]his isn't exactly what we wanted" and asked Nurse to make an addendum to the notes. Nurse's reply to this request was, "Sure. I can make an addendum. What do you want me to say? I'll say whatever you want, but I won't lie." Supervisor then said, "[w]ell, we don't want to do this" and put the revised progress notes in the shredding machine. Two days later, Hospital terminated Nurse's employment.

Hospital's documentation of the reason for Nurse's termination was set forth in a document entitled, "FREEMAN HEALTH SYSTEM—RECORD OF CORRECTIVE ACTION," which stated:

Reasonable cause to believe that [Nurse] jeopardized the health and safety of her patient. [Nurse] did not accurately assess a Patient's [sic] condition which resulted in miscommunication to the physician. [Nurse] failed to tell the physician all of the symptoms which would allow him to determine appropriate treatment. The request for medication made to the physician would not have helped the symptoms [Nurse] documented on the chart.

There is a loss of confidence and trust that [Nurse] can go forward with sound judgement in patient care.

### III. Discussion

■■■■ Generally, an employee who does not have a contract which contains a statement of duration is an employee at-will and may be discharged at any time, with or without cause, and the employer will not be liable for wrongful discharge. *Luethans v. Washington Univ.*, 894 S.W.2d 169, 172 (Mo. banc 1995). However, Missouri courts have recognized public policy exceptions to

the employment at-will doctrine in *Boyle v. Vista Eyewear, Inc.*, 700 S.W.2d 859 (Mo.App. W.D.1985). *See Porter v. Reardon Mach. Co.*, 962 S.W.2d 932, 936 (Mo.App. W.D.1998). The public policy exception to the at-will employment doctrine "provides that an at-will employee who has been discharged by an employer in violation of a clear mandate of public policy has a cause of action against the employer for wrongful discharge." *Boyle*, 700 S.W.2d at 871. Public policy "finds its sources in ... the letter and purpose of a constitutional, statutory or regulatory provision or scheme...." *Id.*

An employee has a cause of action for wrongful discharge if he or she was discharged for: "(1) refusing to perform an illegal act or an act contrary to a strong mandate of public policy; (2) reporting wrongdoing or violations of law or public policy by the employer or fellow employees to superiors or third parties; (3) acting in a manner public policy would encourage ...; or (4) filing a workers' compensation claim." *Porter*, 962 S.W.2d at 935–36.

*Dunn v. Enter. Rent–A–Car Co.*, 170 S.W.3d 1, 6 (Mo.App. E.D.2005).

■ Nurse contends her case falls within the exception identified in *Dunn* as "(1);" that she was discharged for failing to follow directives that, had they been followed, would have been contrary to a strong mandate of public policy. *See also Porter v. Reardon Mach. Co.*, 962 S.W.2d 932, 936–37 (Mo.App. W.D.1998); *Boyle v. Vista Eyewear, Inc.*, 700 S.W.2d 859 (Mo.App. W.D.1985). " 'Public policy' is that principle of law which holds that no one can lawfully do that which tends to be injurious to the public or against the public good." *Boyle*, 700 S.W.2d at 871. This Court has previously held that the NPA (and related regulations promulgated by the State Board of Nursing in 4 C.S.R.

200–2) constitutes a clear mandate of public policy and may support a cause of action for wrongful discharge. *Kirk v. Mercy Hosp. Tri–County*, 851 S.W.2d 617, 621–22 (Mo.App. S.D.1993).

In *Kirk*, a registered nurse made an initial assessment of a patient and a "nursing diagnosis" of toxic shock syndrome. She became concerned when antibiotics were not swiftly ordered to combat what she believed to be a life-threatening infection. She related her concerns to the hospital's Director of Nursing who allegedly told her to "document, report the facts and stay out of it." 851 S.W.2d at 618. The patient eventually died. The nurse at issue allegedly offered to obtain the deceased patient's medical records for a family member of the decedent and stated to another hospital employee that the decedent's doctor had "pav[ed] her way to heaven." *Id.*

The nurse was then terminated and received a service letter which stated that on several occasions she had made certain statements that were untrue and evidenced a lack of support for the hospital's administration and medical staff. *Id.* The nurse contended that her firing resulted from her refusal to "stay out of it," and she sued the hospital for wrongful discharge. *Id.* at 622. The trial court did not believe the nurse's allegation was sufficient to bring her within the public policy exception to the employment-at-will doctrine and granted summary judgment in favor of the hospital. This Court reversed, holding that the NPA set forth a clear mandate of public policy that a nurse should "not 'stay out' of a dying patient's improper treatment." *Id.* at 622.

Here, as in *Kirk*, Nurse was licensed under the provisions of the NPA. One of those provisions defines Nurse's profession to include "[t]he coordination and assistance in the delivery of a plan of health care with all members of the health team."

Section 335.016(10)(d); *Kirk*, 851 S.W.2d at 621. Part of that coordination and assistance involves accurately documenting what actions are taken in relation to a patient's care. The license of a registered nurse is subject to being suspended or revoked for, *inter alia*, "misconduct, ... fraud, misrepresentation or dishonesty in the performance of the functions or duties of any profession licensed or regulated by sections 335.011 to 335.096.[4]" Section 335.066.2(5). Deleting those portions of Nurse's progress notes that criticized certain actions taken by Dr. Collins could be seen by the Missouri State Board of Nursing as constituting such misconduct, fraud, misrepresentation or dishonesty. It might also deprive those responsible for the licensing and regulation of physicians and hospitals of information germane to their task.

Nurse testified at her deposition in a manner consistent with the claims Plaintiffs make in their petition. Defendant's motion for summary judgment consists of evidence of other events it says were the actual basis for its decision to terminate Nurse and points out discrepancies between Nurse's oral testimony and written progress notes. As recently noted by our Supreme Court in a case brought under the Missouri Human Rights Act, "[s]ummary judgment should seldom be used in employment discrimination cases, because such cases are inherently fact-based and often depend on inferences rather than on direct evidence." *Daugherty v. City of Maryland Heights*, 231 S.W.3d 814, 818 (Mo. banc 2007) (citations omitted).

As in *Kirk*, we have no way of determining whether Nurse was discharged for refusing to delete portions of her progress notes or for the reasons suggested by Hospital. The record presented to the trial court shows two plausible, but contradictory, accounts of why she was terminated. *See Barekman*, 232 S.W.3d at 681; *ITT Commercial Fin. Corp.*, 854 S.W.2d at 376. Because resolution of the matter will require the drawing of inferences from disputed facts and Nurse's account sufficiently invokes the public policy exception to the employment-at-will doctrine, the trial court's summary judgment is reversed and the case is remanded for further proceedings.

PARRISH, J., Dissents.

RAHMEYER, J., Concurs.

JOHN E. PARRISH, Judge, dissenting.

I respectfully dissent.

The majority opinion relies on *Kirk v. Mercy Hospital Tri–County*, 851 S.W.2d 617 (Mo.App.1993), as authority for reversing the judgment of the trial court. The trial court, in *Kirk*, held that there was no public policy exception to the employment-at-will doctrine in Missouri. *Id.* at 619. This court held that this was error; that there is a public policy exception to the employment-at-will doctrine. The judgment in *Kirk* was reversed and the case remanded for further proceedings.

In this case the trial court acknowledged that there is a public policy exception to the employment-at-will doctrine. It concluded that Freeman Health System, Ms. Hughes' employer, had not violated that policy. The issue in this appeal is not the issue that was before this court in *Kirk*. The issue in this case is whether, based on its facts, the public policy exception requires that the judgment be reversed.[1]

---

4. Statutes governing the licensing and regulation of various types of nurses, including registered nurses.

1. Another difference between this case and *Kirk* is that *Kirk* was a service letter case. *See*

§ 290.140, RSMo 2000. The record in this case does not reflect that Ms. Hughes requested a service letter.

Although Ms. Hughes contends she was discharged for failing to take actions that would have violated public policy and that her failure to make an addendum to a patient's chart in order to fully document what occurred in providing patient care was the cause for her discharge, she has not specified with any particularity how the making of an addendum to the chart would have violated public policy. The record reflects that when Ms. Hughes learned that the correct procedure for recording additional information concerning what patient care was provided was to prepare an addendum to the chart, she agreed to do so. However, she did not prepare an addendum. The record does not reflect why she failed to complete the patient record by means of an addendum to the patient's chart.

Ms. Hughes received eight reprimands from March 1997 to September 2004. The final reprimand, per the personnel records of her employer, resulted in her discharge. The employer's records state that the reason for her discharge was failure to render proper care to a patient on August 30, 2004, and failure to accurately inform physicians of the patient's condition. I do not believe that the record before this court demonstrates there was a factual question that would permit a finding that Ms. Hughes' discharge was contrary to public policy. I would affirm the judgment.